**WORTMAN v. YOUNG.    (No. 275–3507.)** *

(Commission of Appeals of Texas, Section A. Dec. 14, 1921.)

**1. Fraud ⊜58(4)—Evidence held to show purchaser knew representations were false.**

In an action based on false representations in a land deal, evidence *held* to show that the purchaser knew the representations were false before signing a contract to purchase.

**2. Fraud ⊜22(1)—Party charged with knowledge of facts putting him on his guard.**

While a party to whom representations are made has the right to rely upon them, and is not required to make an investigation to ascertain their truth or falsity, he is charged with knowledge of facts which put him on his guard.

**3. Fraud ⊜58(4)—Purchaser's reliance on representations held not shown.**

Where the evidence as a whole shows a purchaser had some information that representations concerning land were false before he signed the contract to purchase, his testimony that he relied on the representations does not prevent inquiry as to his reliance thereon.

**4. Fraud ⊜20—Representations as to irrigation system held not actionable.**

A purchaser of land cannot recover for false representations as to the adequacy of a canal system to furnish water for the land purchased after he had partially learned of the true condition.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by J. L. Wortman against J. D. Young. From a judgment of the Court of Civil Appeals for the Fourth Judicial District affirming a judgment for the defendant (221 S. W. 660), plaintiff brings error. Reversed and rendered.

Seabury & George, of Brownsville, for plaintiff in error.

Gaines & Corbett, of Bay City, and Jas. B. Wells, of Brownsville, for defendant in error.

RANDOLPH, J. Plaintiff, Wortman, sued defendant, J. D. Young, in the district court of Cameron county upon a series of notes given as part of the purchase price for certain lands situated in that county, praying for judgment and for foreclosure of a vendor's lien retained to secure the payment of the notes. Defendant, Young, answered by general demurrer, general denial, and a plea of failure of consideration. The case was submitted to the jury upon special issues, and upon the issues and answers thereto by the jury judgment was rendered by the trial court in favor of defendant, that plaintiff take nothing by his suit, and also canceling and annulling the notes and lien sued upon by plaintiff.

From this judgment the plaintiff appealed to the honorable Court of Civil Appeals for the Fourth Supreme Judicial District, and the judgment as against plaintiff and in favor of defendant was there affirmed. 221 S. W. 660. Writ of error having been granted by the Supreme Court, the case has been submitted to this section for consideration.

As stated above, plaintiff brought this suit praying for judgment for the amount of his debt on the notes and to foreclose his vendor's lien upon the land in controversy. The defendant, in his plea of failure of consideration, alleges false representation made by plaintiff upon which he relied as to the character and sufficiency of machinery and adequacy of canal to furnish water to irrigate his crop.

The evidence, briefly stated, shows the following basic facts upon which the judgment was rendered: The plaintiff, owning certain

---

land, became one of the promoters of the La Feria Mutual Canal Company, intended or designed to water, among other lands, about 12,000 acres belonging to plaintiff and other promoters. Plaintiff entered into a contract of sale with the Southern Land Company, a corporation, by which he sold it his land. Being averse to selling his land for the small cash payment of $1,000 received (with vendor's lien notes for the balance), he had the deed he then executed deposited in a bank, to be delivered when certain other cash payments were made. The land company immediately entered into the business of selling the land, and when any portion was sold the cash payment and notes, up to the amount of $20 an acre cash and $60 in vendor's lien notes upon that particular land sold, were to be delivered to plaintiff and he in turn was to release the lien held by him in his deed to the company in favor of the purchaser, and to rely only on the new security.

On December 20, 1913, the land company brought to the neighborhood of the land, among other prospective purchasers, the defendant. At a meeting in the Pullman car on the night of the 20th of December it is alleged by defendant that the representations were made by the plaintiff in words and under the conditions which will be more fully set out hereafter. After hearing the representations, on the next day, the defendant was taken to see the land and, incidentally, saw the canal. He did not purchase any land on this trip, but after he went back to his home in Hunt county he closed a trade with Wetzel, president of the Southern Canal Company, for a tract of land known as the Adams tract. Defendant closed his purchase of the Adams tract in January, 1914, and moved to that land in February of that year, and built a home on it. He then rented a tract of land known as the Smith tract, which had been sold by plaintiff to Smith, and which was under the same canal designed to water the tract he afterwards purchased from the land company. As tenant on the Smith tract, which he attempted to cultivate, it is shown that he was familiar with the surroundings prior to his purchase of the land in controversy. Owing to a defect in the title to the Adams land he concluded to part with his claim to it, and some time about or after the 29th of May, 1914, he concluded a trade with the Southern Land Company whereby he conveyed to them the Adams tract and received a deed to the land in controversy, which deed was dated May 15, 1914, and also signed and delivered the notes sued on, and moved the house he had built on the Adams tract over to the land in controversy.

The defendant testified that Wetzel, the president of the land company, at the meeting of the Pullman car referred to above,

made a little talk about the canal and pumps being able to take care of the 24,000 acres of land, the plaintiff being present, and that the plaintiff, after Wetzel got through, made the statement that the canal was sufficient to take care of the land; that he (plaintiff) had worked on this proposition before he got it just like he wanted it, and that it was now in good shape and able to take care of all the land; that he would not have bought the land at all but for the representations with reference to its irrigability, and that he relied on it. It does not appear that he ever made any complaint as to having been misled until the foreclosure suit was filed by plaintiff.

[1] The honorable Court of Civil Appeals, in passing upon the plaintiff's first assignment of error and the proposition thereunder, being as follows:

"The court erred in failing and refusing to give to the jury at the conclusion of all the evidence herein, as requested by the plaintiff, an instruction to return a verdict for him"

—discuss the facts in the case, and overrule the assignment. In arriving at their judgment that the assignment should be overruled, that court, upon the question of the representation and the reliance of defendant upon the representation made by plaintiff, held that the canal was inadequate to supply sufficient water; that there was no evidence to show that defendant had or could have discovered the true condition of the canal at the time he contracted to purchase the land, or in time thereafter to have protected himself; that at the time he did not know its condition, but relied on the statements made to induce the trade.

We cannot agree with this statement. In fact, to our minds the evidence shows conclusively that the defendant knew that the representations were false before he ever signed the contract to purchase the land in controversy. The representations complained of were made on December 20, 1913. Without acting on them defendant returned home. It seems that he kept in touch with Wetzel, the president of the land company, and in February, 1914, purchased a tract of land known as the "Adams" tract. This tract does not appear to have in any way been involved in the Wortman sales which the Southern Land Company was making. In February, 1914, defendant rented a farm known as the "Smith" place, and began the cultivation of that tract. The Smith land was in close proximity to the land in controversy, and under the same lateral; both tracts being watered by the same ditch. He testified that he made application to the canal company for water to irrigate the Smith land during March, April, and May of 1914, but failed to get any. About May 29, 1914, he traded his Adams tract to the Southern

Land Company for the land in controversy, and thereafter executed the notes sued on, and received his deed from the company.

[2] While we understand the rule to be that a party to whom representations are made has the right to rely upon such representations, and that he is not called on to make an investigation to ascertain their truth or falsity, yet there must be the limitation placed on the rule that he must not be in possession of information that shows the utter falsity of the representations. The decisions in this state do not require a party to make an investigation, but he must and will be charged with knowledge of facts which do put him on his guard.

"It is essential, of course, that the party to whom the representations are made should be ignorant of the matters represented. If before he acts he has knowledge of the truth, and thus knows that the statement is false, it cannot be said that he is deceived." 20 Cyc. p. 32, par. 5.

"The misrepresentations which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge. * * * A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness." Slaughter's Administrators v. Gerson, 13 Wall. 379, 20 L. Ed. 627.

"To entitle one to avoid a contract on the ground that he was induced to enter into it upon the faith of unwarranted representations, it is essential that he should be ignorant of the matters represented. If, before he acts, he has knowledge of the truth, and thus knows that the statement is not true, it cannot be said he is deceived." Supreme Court of Michigan, De Grasse v. Verona Mining Co., 185 Mich. 522, 152 N. W. 245.

"It is clearly not necessary that the contract should have been made, property transferred, or goods sold, immediately after the false representations were made, if the injured party continued to rely upon them, and had no reason to entertain a doubt of them, and *no fresh* sources of information." (Italics ours.) Black on Rescission, § 73.

"We have shown in the preceding sections that where false and fraudulent representations are made, inducing a party to enter into a contract, he is not chargeable with negligence precluding relief merely, because the falsity of the representations could have been discovered by him if he had prosecuted an independent investigation into the subject-matter, which he failed to do. But it must now be added that this rule does not apply where there are facts within the knowledge of the defrauded party of such a nature as to cast grave suspicion on the veracity of the representations made to him, or such that a person of ordinary care and prudence would not be satisfied to rely supinely upon them, without making some effort to probe and test their truthfulness." Black on Rescission, § 117.

235 S.W.—36

"We understand that to entitle a party to absolutely rely on representations made to him he must have exercised ordinary observation not requiring search or detailed investigation to determine their falsity." Black on Rescission, § 115.

That the representations must be relied on plainly includes the supposition that the party is justified, under all the circumstances, in thus relying on them.

"If a party receiving a misrepresentation is, at the time when it is made, either from knowledge acquired previously or obtained at that very moment, fully aware of the truth, acquainted with the facts as they really are, he cannot claim to be misled, and cannot defeat or disaffirm or rescind the transaction on the ground that it was entered into through false representations." 2 Pom. Eq. Juris. (3d Ed.) § 895.

In the case of Loper v. Robinson, 54 Tex. 513, Robinson represented to the Lopers that certain land which he was endeavoring to sell the Lopers had a cedar brake on it. Before the trade was consummated, a survey of the land, with Loper present and carrying the chain, disclosed that the cedar brake was not on the land. Loper having pleaded misrepresentation, the court in passing on his plea held:

"In the present case, the statement of facts discloses that it was proven by the oath of the defendants themselves that at the time when they executed the note sued on, and when they received their deed to the land they had definitely ascertained and well knew that there was no cedar brake upon the land they purchased. Whatever may have been their information when they first traded for the land, * * * and executed their note for the purchase money, they had the fullest knowledge, from actual inspection, of the character of the property they were purchasing. It is beyond controversy that there was then no deceit practiced upon them, nor could there have been. If they were circumvented they were willing dupes. They shut their eyes and closed their lips, when they could have seen for themselves, and uttered no complaint when they could have spoken. Under such circumstances, they have no right to complain of the enforcement against them of their obligation knowingly, willfully, and deliberately consummated."

[3, 4] Among the other issues submitted by the district court to the jury on the trial of this case was question No. 11, which is as follows:

"Did the defendant, J. D. Young, after the representations were made to him by Dr. J. L. Wortman as to the adequacy of the canal system to furnish water to the lands upon which it had contracted to water, and before he executed and delivered the notes sued on, learn of the true condition of the canal system and its adequacy and ability to furnish water to the land purchased by him?"

To which question the jury answered: "Partially."

We cannot concede the law to be, in view of the citations and quotations above given, that, notwithstanding his knowledge that water was not being furnished him and that such failure continued through three months of the crop season, defendant Young should be allowed to claim that he relied on the plaintiff's representations. The physical facts show the falsity of this claim. The finding of the jury that he had partially learned of the true condition of the inadequacy of the canal system to furnish water and the evidence quoted above show unqualifiedly that Young had such information of the falsity of the representations that he could not be, and was not, deceived. The fact that Young testifies that he did rely on the representations does not close the door on the inquiry, but, when the evidence as a whole shows that he had information and knew of the facts which could not exist along with faith on his part in the truth of the representations, courts are not thereby compelled to accept his version as the truth. The jury did not do so, because they found that he had learned "partially" of the inadequacy of the canal system to furnish the water.

In view of the facts brought home to him, as an ordinarily prudent man charged with the knowledge thus obtained, and in view of the verdict of the jury that he had partially learned of such inadequacy, we cannot acquiesce in holding the judgment of the district court or of the honorable Court of Civil Appeals in this case as being warranted by the verdict of the jury, but recommend to the Supreme Court that the judgments be reversed and rendered in favor of plaintiff and against the defendant.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.