**COATES v. THOMAS et al. (No. 7582.)**

(Court of Civil Appeals of Texas. San Antonio. May 26, 1926. Rehearing Denied June 16, 1926.)

1. **Vendor and purchaser ⊚⟼42—Vendee, who, after discovering falsity of representations, accepted deed and entered into written extension of purchase-money notes, held to have waived rights.**

Where vendee, after discovering falsity of representations that land was outside resaca, or low place, and that land would be irrigated by gravity flow of water from irrigation canals, accepted deed, and entered into written agreement of extension of purchase-money notes, and did nothing for nearly four years, held, that he not only waived any right he might have had to rescind contract, but by his delay was barred from seeking relief through court of equity.

2. **Vendor and purchaser ⊚⟼119—Purchaser failing to ascertain facts as to location of land held barred from rescinding for misrepresentation.**

Where one purchasing 40 acres of land on representation that it lay outside a resaca, or low place, made no effort for four years to ascertain location of 14 acres, though he knew only 26 acres, almost surrounded by the resaca, were in cultivation, he was barred by laches from rescinding because the 14 acres were within the resaca.

3. **Vendor and purchaser ⊚⟼44—Market value of neighborhood lands held irrelevant and immaterial in action for rescission on ground of fraudulent representation as to irrigation of land, and that it was outside resaca.**

In action by vendee for cancellation of purchase of land by reason of false representation that land was outside a resaca or low place, and that land would be irrigated by gravity flow of water from irrigation canal, testimony as to market value of neighborhood lands was irrelevant and immaterial.

4. **Appeal and error ⊚⟼1051(1)—Admission of testimony of one who prepared map as to meaning of certain lines was not prejudicial, where map showed same facts, and was on record.**

Admission of testimony of one who prepared map of land in controversy as to mean-

ing and purport of certain lines on map was not prejudicial, where map showed the same facts, and was on record.

5. **Vendor and purchaser ⊚⟼44—That vendee, suing for rescission because of false representation that land was outside resaca, sought rebate for certain land in the resaca was admissible to show that he knew that he had land in the resaca.**

In action by vendee for cancellation of purchase, on ground of false representation that land was outside a resaca, and would be irrigated by gravity flow from irrigation canals, testimony that plaintiff sought rebate from water district for land in the resaca was admissible to show that plaintiff knew that he had land in the resaca.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by J. C. Coates against C. F. Thomas and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Graham & Graham, of Brownsville, for appellant.

Seabury, George & Taylor, Harbert Davenport, and Milton H. West, all of Brownsville, for appellees.

FLY, C. J. This cause was tried on a second amended petition, although the other two petitions are copied into the record and occupy 47 of the 126 pages of the transcript. Appellant instituted the suit against James-Dickinson Farm Mortgage Company, a Missouri corporation, James-Dickinson Farm Mortgage Company, a Texas corporation, C. F. Thomas, B. H. Frazier, United Land & Irrigation Company, a Texas corporation, Joseph Studer, Charles Reid, F. W. Seabury, J. C. George, V. W. Taylor, A. D. Dickinson, and the El Jardin Immigration Company, a Missouri corporation, to obtain the cancellation of a purchase of certain lands made by appellant and conveyed to him by the said C. F. Thomas, acting for the corporations named, and for the cancellation of certain promissory notes given by appellant for said land, and to recover $3,500 expended in improvements on the land, and taxes expended on the land, and various and other matters connected with said land, to name which consumed three pages of prayer, and, in the alternative, for damages in the sum of $10,000. The court, after hearing the evidence, instructed the jury to return a verdict as against appellant on his demands, and, furthermore, to return a verdict in favor of V. M. Taylor, J. C. George, and F. W. Seabury on the five vendor's lien notes offered by them under their cross-action, and for a foreclosure of the vendor's lien on the land described in the petition. Judgment was rendered upon the instructed verdict returned by the jury as against appellant on his claim and in favor

---

⊚⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the other parties to the suit as indicated in the instructions.

[1] Twelve of the seventeen assignments of error assail the action of the court in instructing a verdict for appellees, on the ground that there were facts in evidence that tended to show the allegations as to fraud made by appellant were true. It may be admitted that Potter, representing the El Jardin Immigration Company, falsely stated to appellant that all of the 40-acre tract of land could and would be irrigated by a gravity flow of the water from the canals of water improvement district No. 5 in Cameron county; that it would be supplied within 60 or 90 days after the sale was made; that the land purchased contained 40 acres outside the "resaca" or low place in the land, at times covered with water. It may be further admitted that the representations were untrue, in that the water was not supplied in the time named, nor for a much longer time; that the land could not be, and was not, irrigated by the force of gravity from the canals; that at least 14 acres of the 40-acre tract were on the slope of the "resaca" or low place, and the same were not in the Cameron county water improvement district No. 5, and not subject to irrigation therefrom. However, the testimony showed that, after all these matters had been discovered by appellant, and after he had full knowledge of all the facts narrated, he accepted a deed to the land, and, after two of the notes had become due, entered into a written agreement of extension of the notes, containing the following recital:

"Party of the second part hereby agreeing and confessing the debt evidenced by said notes to be just, true, and owing by him to the party of the first part, and the said vendor's lien securing same to be in all things in full legal force and effect, so that each of said five notes shall mature and become payable twenty (20) months later than the maturity dates now shown in the face of said notes, respectively, and party of the second part hereby agrees to pay said indebtedness to party of the first part, or other holder thereof, at the expiration of such extended maturities, and it is agreed that all rights, privileges, and benefits conferred upon or acquired by said party of the first part as payee of said notes are expressly reserved and confessed, subject alone to the respective extension of said five notes herein granted."

That agreement was dated April 3, 1922, and was signed by James-Dickinson Farm Mortgage Company and appellant, J. C. Coates.

Appellant testified that he lived in Toledo, Ohio, and was a traveling salesman; that he lived in Cameron county from September 18, 1921, until about June 6 to 10, 1922, when he returned to Ohio. He left about two months after signing the extension agreement. He swore that the vendors sold the land to him in July, 1920, and made representations that the land was the best in the valley, "40 acres on top of the ground"; that the resaca would be free for grazing purposes; that water would be obtained in 30 to 60 days by gravity flow. He swore that he knew in the fall of 1921 that water could not be furnished by gravity, and he knew at that time that some of the water money had been returned to him by the water company, and they wrote him that 14 acres of the land was not in the water district. He said he ascertained part of the land was in the "resaca" in 1924, and then he instituted suit, and that, had he known that part of the land was in the "resaca," he would not have signed the extension agreement. Appellant admitted that he knew part of the representations to him were untrue in September, 1920, but did not seek to rescind, but continued to make some payments and arrange for extensions as to others. He was told that the vendors could not control the water supply, and it was recited in his deed that the delivery of water was "entirely under the control and direction of said district." He was told in September, 1921, that the land company had nothing to do with supplying water, and he said:

"I do not know why I did not demand rescission of my contract, I should have done it, but I didn't."

A pump was installed on the land with which to obtain water from the "resaca," without charge to appellant. He knew that 14 acres of the land was not in the district. On March 29, 1923, appellant wrote to A. D. Dickinson, and made no complaint whatever as to the land. In a letter written on November 25, 1923, appellant made no complaint, but sought to obtain help in draining the "resaca." He must have known at that time that some of his land was in the "resaca." He said:

"I still, on November 25, 1923, recognized those notes as just obligations, and said I intended to pay them."

Appellant swore that he knew at the time of purchase he was to get a part of the "resaca," but thought he was to get 40 acres besides. He read his deed, which only conveyed to him 40 acres of land, and he claimed a part of the resaca up to April, 1924. The land was shown to be very fertile.

Not only did appellant by his written contract of renewal of the notes waive any right he might have had to rescind the contract of purchase, but by his delay, for nearly four years after being charged with a knowledge of the falsity of all the representations which he claims constituted fraud, he shuts himself off from any claim to the exercise of the powers of a court of equity. He must have known, he did know, as much about the falsity of the so-called representations in the latter part of 1920 as in 1924. The claim that he owned the property for over four years, lived on it for months, and did not know how much of a small tract of land was in the resaca, is utterly improbable and unreasonable.

He stated that he knew that 26 acres was in cultivation, and his rent contracts prove that he did, but swore that he did not inquire as to the location of the 14 acres, and did not know where they were. He was charged with such knowledge. It is incomprehensible that a traveling salesman out of Toledo, accustomed to attending to business, would take no steps to locate his high-priced land in the valley of the Rio Grande, noted for its great value, fertility, and productiveness.

The facts show that appellant, after being in possession of all the facts, dealt with the property as his own, and ratified and reaffirmed the contract, and, if he ever had any right to rescission, which is not apparent ever existed, he lost it by his laches. "Equity aids the vigilant, not those who slumber on their rights," and this principle has a bearing upon every remedy sought in a court of equity. Equity rewards diligence, and frowns upon sloth and neglect. In all cases of fraud from which relief may be sought, laches will destroy the hope of relief. Pom. Eq. Jur. (4th Ed.) §§ 418, 419. As quoted from an English chancellor in the last-cited paragraph:

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence." Minter v. Hawkins, 54 Tex. Civ. App. 228, 117 S. W. 172.

[2] Not only would appellant be shut off from equitable relief by actual knowledge without action in a reasonable time, but he loses the right to rescission by his failure to use reasonable diligence to discover the fraud by inquiring into facts that would put any reasonable man upon notice and invoke his activity in ascertaining all the facts. There was no relation of trust and confidence between the parties, but they were dealing at arm's length, and all the facts were open to inspection and investigation. Knowledge that the 26 acres of land were of a horseshoe shape, surrounded on all sides by the resaca, except one, would put any reasonable man upon inquiry as to where the remainder of the 40-acre tract was located. Appellant for four years, according to his own testimony, made no effort to ascertain the location of his missing 14 acres of land. He knew that only 26 acres were in his farm, for he rented that number of acres when he rented the farm. His own testimony excludes him from favorable consideration in a court of equity. He offers no reasonable excuse for his laches. Not only his laches prevent relief, but a written ratification of the contract after full knowledge of all the facts. Pom. Eq. Jur. § 2109. There was no question of fact to be considered by a jury.

In view of the ratification of the contract as well as his laches, the questions of agency, of damages, and of innocent purchasers of the notes become unimportant. We find, however, that the agencies alleged and damages were not proved by appellant. We overrule all the assignments of error from the first to the thirteenth, inclusive.

[3] Appellant sought to show by William Becker of Lima, Ohio, the market value of lands in the neighborhood of appellant's land in 1920, but the witness testified that he did not know the settled market value of land in that vicinity, and was not permitted to testify as to the market value of the land. The testimony was irrelevant and immaterial had the witness known the market value.

The conversation between appellant and his attorney at the time the latter was employed to represent him, which the attorney desired to present to the jury through his own testimony, was properly excluded. It was not only improper, but had no bearing on any issue in the case.

[4] The testimony of Anderson, who prepared the map of the land of which the land in controversy was a part, as to the meaning and import of certain lines on the map could not have injured appellant, because the map showed the same facts and it was on record.

[5] It was permissible to allow in evidence the statement of appellant to Fred Rusteberg, the manager of the water district, that he wanted a rebate for 14 or 15 acres in the resaca. The evidence was admissible to show that appellant knew that he had land in the resaca. Rusteberg sent an engineer to the land after the conversation, who went over the land and found about 15 acres in the resaca, and the rebate for that number of acres was paid to, and accepted by, appellant.

The judgment is affirmed.