OWEN v. AL PARKER SECURITIES CO. et al.   (No. 7761.)

Court of Civil Appeals of Texas. San Antonio. April 27, 1927.

On Motion for Rehearing May 25, 1927.

Further Rehearing Denied June 22, 1927.

1. Appeal and error ⬅866(3)—Instructing verdict, if error, was fundamental, and appellate court will review entire record whether or not other errors are assigned.

Instructing verdict in case tried to jury, if error, was fundamental, requiring the appellate court to review the entire record whether or not other errors are assigned.

2. Principal and agent ⬅177(4)—Person given charge of land to clear it for cultivation held agent of owner.

As respects notice of condition of property, person put in charge of land by purchaser for purpose of clearing the land in order to plant crops held owner's agent.

3. Vendor and purchaser ⬅37(1)—Purchaser having knowledge of facts sufficient to put him on inquiry cannot rescind for misrepresentation in absence of fraud or mistake.

In absence of fraud or mutual mistake, a purchaser, who through his agent was immediately after his purchase fully advised of facts sufficient to put him on inquiry, cannot rescind for misrepresentation almost three years thereafter.

4. Vendor and purchaser ⬅37(1)—There can be no fraud where complaining party had knowledge of all facts.

There can be no fraud where the complaining party entered into the agreement with knowledge of all the facts.

On Motion for Rehearing.

5. Vendor and purchaser ⬅45—Evidence, in action to rescind land purchase, held sufficient to raise issue of fraud for jury.

In action to rescind contract for sale of land or in the alternative to recover damages

for misrepresentation, evidence *held* sufficient to take question of fraud to jury.

**6. Trial** ⇐==>**139(1), 178—Verdict may not be instructed for defendant, where there is evidence supporting plaintiff's case; motion for instructed verdict admits as true all evidence supporting claim of adverse party.**

Where there is evidence supporting plaintiff's case, verdict may not be instructed for defendant, since a motion for an instructed verdict admits as true all evidence supporting the claim of the person against whom the motion is made, and contrary evidence is not to be considered.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Suit by H. B. Owen against the Al Parker Securities Company and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Graham & Graham, of Brownsville, for appellant.

Seabury, George & Taylor, of Brownsville, for appellees.

COBBS, J. Appellant sued appellees to cancel and rescind certain deeds of conveyance to the lands in controversy and have title to the lands reinvested in A. F. Parker, one of the appellees herein, and to cancel all outstanding obligations on all the deferred promissory notes, representing the balance due as the purchase price of the land, except those held by innocent purchasers, and appellant to be charged with the reasonable rental value of said lands during time he had been in possession of same as an offset against amounts with interest plaintiff had paid on the purchase price and all amounts then unpaid on all notes in the hands of innocent holders and amounts plaintiff had paid in improvements, including taxes and water charges paid by him, and including salaries of employees and traveling expenses, with interest; to have judgment rendered in favor of the plaintiff against said defendants jointly and severally, or whichever one was shown to be indebted to plaintiff in such balance, with interest; and to establish an equitable lien on said land to secure payment of same and to foreclose the lien.

In the alternative, plaintiff sought recovery in damages in the amount of $31,581, with 6 per cent. interest per annum from 9th day of June, 1923.

It is alleged:

"That during April, 1923, the defendants Al Parker Securities Company, A. F. Parker, L. R. Beddoes, Frank R. Lucas, J. L. Parker, Mrs. L. R. Beddoes, and Mrs. A. F. Parker, acting by and through their agents, servants, and employees, or those of some one or more of them, induced the plaintiff to come from his home in Mississippi to the Rio Grande Valley with the view on the part of said defendants selling the plaintiff a portion of a certain tract of land. That the plaintiff, after reaching the valley, was taken charge of by said defendants, or some one or more of them, and shown over the valley, and his attention called to the possibilities of growing citrus fruit and farm products then being produced in said valley." And that appellees pointed out to appellant the lands in controversy, and represented that the same were as good, if not the best, citrus fruit land that could be found in the entire Rio Grande Valley and level, and, if properly drained was exceptionally good citrus fruit land, though at that time almost entirely covered by a thick growth of brush and timber. That plaintiff himself was wholly ignorant of the kinds of land suitable for the growth of citrus fruit.

Relying upon the representations so made to him, appellant purchased said land, and proceeded to improve the same and expend money thereupon. Prior to June 12, 1924, plaintiff discovered there were 4 or 5 acres of the 105.27 acres too low for the growth of citrus fruit, and called the same to appellees' attention, who agreed to, and did, partially adjust the same, and further represented to appellant and guaranteed to him that that was all the low land on the tract, and the balance was as represented, level and highly adapted to the growth and production of citrus fruit and other farm products, when properly drained. But for these representations, upon which he relied, plaintiff would not have adjusted the controversy on said 4 or 5 acres. During the summer or fall of 1925 he for the first time learned that the entire tract of land purchased from said defendants was in fact an old lake bed, which constituted a basin that holds water during wet seasons in such way and to such an extent as to absolutely destroy the value and usefulness of the said tract of land for the production and growth of citrus fruit and other farm products, such as are raised and produced in the Rio Grande Valley; all of which was well known to appellees, but not known to appellant, who for the first time made the discovery about October 1, 1925, and then elected, and thereupon attempted, to rescind the entire transaction, and offered to convey back to appellees all of said lands and improvements, and to account for the rental value of said lands, and demanded that appellees refund the money paid out as purchase price and the amount he had expended on improving the place, with 6 per cent. interest thereon. Appellees declining to do this or to otherwise adjust the controversy, appellant was compelled to file this suit.

Juan Solis, Mateo Solis, G. L. Solis, A. H. Fernandez, and W. B. Clint, being merely innocent holders of the purchase-money notes, are made parties hereto, but no personal judgment is sought against them.

The answer contained demurrers and exceptions, pleas, and alleged waiver on the

part of the plaintiff to the relief sought, and plea of negligence, general denial, and especially pleading an alleged accord and satisfaction, an alleged compromise and settlement, and laches; also pleaded limitations and a denial of the representations alleged by plaintiff to have been made to him.

Plaintiff took a nonsuit against Frank R. Lucas.

The case was tried with a jury, and the trial proceeded until the 6th day of November, when plaintiff finished the introduction of testimony. Whereupon the defendants Al Parker Securities Company, A. F. Parker, Mrs. A. F. Parker, L. R. Beddoes, Mrs. L. R. Beddoes, J. L. Parker, and W. B. Clint moved the court to instruct the jury to return a verdict against the plaintiff in favor of said defendants, whereupon the court, over objections of plaintiff, so instructed the jury, and the jury returned their verdict accordingly, and the court thereupon entered his judgment in favor of said defendants and against the plaintiff.

[1] The case having been tried with a jury, and the court having instructed the verdict, if error, it was fundamental, requiring us to review the entire record, whether other errors are assigned or not.

The contract for the sale of the lands and the deeds of conveyance thereof were made during the month of June, 1923.

The basis of appellant's claim is that the land lies, partly at least, in a basin, and not as appellees represented it to be. Appellant had obtained his deeds prior to September, 1923, at which time he put E. B. McDonald, an employee, in charge of the land for the purpose of clearing the same of brush and cactus for the purpose of planting crops and citrus fruit. McDonald, being informed that the land was low, and that water stood in it, and that there was a duck pond on it, promptly advised appellant of its condition and what old settlers said about it; that it was not citrus fruit land. Appellant many times prior to June 12, 1924, inspected the land, consulted and advised with said McDonald with reference to his operations. McDonald advised him by letter and correspondence, and continued to advise him in reference to the unsuitableness of the land for the purposes for which it was purchased; that rain had fallen upon the land, and as much as 10 or 20 acres had been under water; and that on June 12, 1924, a rain had fallen, and as much as 10 or 20 acres had been under water; and again that a rain had come, and that the entire land was under water. With knowledge of all these facts, appellant, on receipt of said letter from his said agent, just prior to June 12, 1924, wrote to the appellees that his agent, McDonald, had written him that water was all over the land in controversy, and it did not drain, and that there was a basin on the same, and there was no way under God's earth of getting the water off of there, except by pumping it out. Soon thereafter appellant came to La Feria in an automobile, visited his brother who had been living there since the early part of 1923, also visited his son-in-law who was living at La Feria, Tex. He (appellant) entered into negotiations, in good faith, with appellees for the purpose of settling and compromising for the low land on the tract in question. A settlement was had and a written receipt given by appellant in which he settled in full by reason of low land on the land in question for the sum of $1,500, on June 12, 1924. And at the time of said settlement it was agreed that appellant would dig a ditch from the lowest point on the land to a canal adjacent to said land and install a pump and keep the same in readiness to pump out the excess surplus water.

Before purchasing this land, the appellant inspected the same, but at that time, being so covered with brush and cactus, its condition could not be very well ascertained as to its surface. Appellant had as good an opportunity to see it as did appellees.

From the time appellant began his improvements through his employee, whom we shall call his agent, for the capacity in which he worked made him so, he was fully informed as to this low land, and thereafter made the settlement stated, knowing its condition and knowing of this basin.

There is no charge of actual fraud or misrepresentation in respect to the land. It is not disputed that the land, if drained, would be as good as any land for the production of citrus fruit. It is not denied that the land can be drained by the expenditure of some money.

The court did not err for several reasons in instructing the verdict. The case is lacking in any element of fraud and misrepresentation. If the situation of the land was not obvious to appellant at the time of the purchase, it soon was made so by the information he received from the man he put in charge to cultivate it. At first he wholly ignored all information as to its character, but finally did so, and called upon appellees for a settlement for 6 acres, which was consummated on the basis of 4 acres, more or less, which was done more than two years before the institution of this suit. He not only thereby waived his damages, but any claim he asserts was discovered two years before the institution of this suit, if not covered by or merged in the settlement, thereby became barred by the two-year statute of limitations.

It was testified to that during the year 1924 it rained so hard as to cover the land with water all over, and it was so in 1925. In the duck hunting season in 1924 the water was all over the 100 acres, except a little fringe around the edges. But in 1923 it was just a small pond, say 4 or 5 acres. In the spring of 1924 there came a big rain, and

"ducks were copious" in the pond made thereby. About 15 acres in the spring of 1924 were covered with water in this low place after the whole 100 acres were cleared. The 100 acres at the fringes were a little bit higher than in the center, and the slope was towards the center, so that a man standing on that 100 acres could see the pool in the middle after it was cleared. The biggest rain testified about occurred in 1925. A two-inch rain under normal conditions is good for farming purposes. The quality of the land is fine, and, if equipments are placed on the land to care for its drainage from unusual rainfalls that run from a half to four or five inches, to keep the water within a 4 or 5 acre space, it would be an excellent piece of farming land for any purpose. If an arrangement was made to take care of the water that accumulates on the land by a pump for ordinary rains, there would be no trouble about its drainage.

It is not necessary to set out at length the testimony.

[2, 3] There is no testimony to show any fraud committed upon appellant or false representations made to induce him to purchase the land. Immediately after his purchase he took possession of the land through Mr. McDonald—whether you call him employee or general manager, he at least was an agent of appellant in the care of his property—and appellant was advised through him at the very outset of the true character of the land, and, notwithstanding this, he continued with his purchase of the land, and continued to develop it, and cannot now be heard, in the absence of fraud or mutual mistake, to rescind. Wortman v. Young (Tex. Com. App.) 235 S. W. 559; Coates v. Thomas (Tex. Civ. App.) 285 S. W. 700.

One need not have knowledge of all the facts, but it is sufficient to charge him with notice if he has notice of sufficient facts to put him upon inquiry. Waggoner v. Zundelowitz (Tex. Com. App.) 231 S. W. 727; Donoho v. Hunter (Tex. Com. App.) 287 S. W. 47; Mason v. Peterson (Tex. Com. App.) 250 S. W. 147.

[4] There can be no fraud where an agreement is entered into with knowledge of all the facts. 12 C. J. pp. 348–353. On page 353, 12 C. J., it is said:

"Where a party to the settlement has the means in hand of ascertaining the facts, but neglects to avail himself thereof, he cannot thereafter have the settlement set aside because of mistake. A fair compromise will be sustained by the courts, notwithstanding errors of law or mistake of facts of which the party complaining could by reasonable diligence have informed himself, especially where the means of knowledge as to the fact in controversy is equally accessible to each party," etc.

This contract for the sale and the purchase of the land began in the spring of the year 1923, and soon thereafter appellant discovered the alleged condition of the land, or fraud, if there was fraud, and had such notice from his agent or employee, McDonald, as would put an ordinary reasonable and prudent person upon inquiry which would have disclosed the low land, if not already known. This suit was filed on June 16, 1926. He knew prior to June 16, 1924, that there was a basin on his land, and that the water had covered from 7 to 20 acres, and on one occasion covered the entire tract of which appellant was fully advised, and knew that said basin was then visible to the naked eye for two years prior to this suit, and knew the only way that he could get rid of the excess water was by pumping it off, and knew that there was no outlet from that basin to carry it off by gravity. He knew that water had been all over the land, under his house and in his garages, accumulated from excessive rains. We can see no controverted issuable matter of fact to be found by the jury.

This is a fact case, and all the facts support the judgment of the trial court.

Finding no reversible error committed by the ruling of the court assigned, the judgment is accordingly affirmed.

## On Motion for Rehearing.

Originally we hesitated in affirming the judgment in this case, because the trial court instructed a verdict which is fundamental error, requiring a review of the entire evidence and record, and, while examining this record and the lengthy briefs of both parties, we reached the conclusion there was no error shown, and followed largely the contention of appellees, which was verified by our examination, at which appellee complains, and which statement of the evidence is attempted to be sustained by the answers of appellees to appellant's motion for rehearing.

[5, 6] In carefully reviewing this record, we think we were in error in holding there was no issue of fraud presented at all, or that there was no issue raised by the pleading or evidence that presented a jury question. In that we think now we were in error. It is sometimes very hard in a case like this, presenting such a voluminous record, to say there was no question of fact for the jury to pass upon and thus deprive a litigant of the benefit of a trial by a jury. The appellant has very well said:

"This case was tried to a jury, and the trial court instructed a verdict. Therefore, if there were any competent evidence to support the claims of the appellant, the trial court erred in instructing the verdict, for it is held by the authorities that a motion for an instructed verdict, for this purpose, admits as true the evidence supporting the claim of the person against whom the motion is made, and only the evidence supporting such person's claim should be considered; if there is none, then the verdict may be instructed. If there is evidence sup-

porting the claim, a verdict cannot be instructed."

The trial court should have granted appellant a new trial. It was error not to have done so, and the court erred in instructing the verdict.

Our former opinion and judgment is set aside, the motion for a rehearing is granted, and the judgment of the trial court is reversed, and the cause remanded for a new trial.

Reversed and remanded.