**SUNDERMAN v. ROBERTS et al.**

No. 11836.

Court of Civil Appeals of Texas. San Antonio.

June 23, 1948.

Rehearing Denied Sept. 15, 1948.

Cox, Dyer & Taylor, of McAllen, for appellant.

Greer, Cox & Patterson, of McAllen, for appellees.

NORVELL, Justice.

Upon the completion of the taking of the evidence, the trial judge, being of the opinion that the law issues only were involved, discharged the jury and rendered judgment for the plaintiff, Lela Roberts, and against the defendant, Paul E. Sunderman, for the sum of $3,178.17. This recovery was based upon a clause in the deed whereby the defendant had agreed to pay off an indebtedness of approximately $3,500, secured by a lien against certain real property which he had conveyed to plaintiff.

The plaintiff, Lela Roberts, and the defendant had formerly been husband and wife. They were divorced on the 12th day of July, 1944. In contemplation of this divorce the parties entered into an agreement, bearing date of July 6, 1944, settling their respective community property rights. This agreement provided that:

"1. In settlement of community property rights between First (Paul E. Sunderman) and Second (Lela Sunderman) Parties, in lieu of an adjudication thereof in Suit No. B-14169 pending in Ninety Third District Court of Hidalgo County, Texas, styled Lela Sunderman vs. Paul E. Sunderman, an action for divorce, First Party agrees to transfer, perfect and vest title of the following property in Second Party, to-wit:

"a. Lot eleven (11) Block three (3), Orange Terrace Unit No. two (2), an addition to McAllen, Hidalgo County, Texas. There is an outstanding first mortgage against said property in the approximate amount of Thirty Five Hundred ($3500.00) Dollars and First Party will pay off and discharge same as his personal obligation, in accordance with the written instruments evidencing said indebtedness and lien, so long as Second Party remains single and retains ownership of said property."

On July 11, 1944, Paul Sunderman executed a deed conveying the real property described in the contract to Lela Sunderman, which omitted the restriction contained in the contract with reference to Mrs. Sunderman's remaining single and retaining ownership of the property. The clause in the deed reads as follows: "The

property is encumbered by a first mortgage lien upon which there is an unpaid balance of approximately $3500.00, and Grantor assumes and agrees to pay off said indebtedness in accordance with the terms of the written instruments evidencing same."

Also, on the same day, July 11, 1944, Mrs. Lela Sunderman's attorney delivered a supplemental pleading to Paul E. Sunderman in which it was alleged, with reference to settlement of community property rights, that: "Defendant has executed his Warranty Deed conveying to Plaintiff Lot Eleven (11), Block Three (3), Orange-Terrace Unit No. 2, in Addition to McAllen, Hidalgo County, Texas, assuming and agreeing to pay off and discharge, and protect and save Plaintiff harmless from any damage or loss by reason thereof, a first mortgage lien against said property in the approximate amount of Thirty-five Hundred ($3500.00) Dollars, payable in monthly installments in accordance with written instruments evidencing said indebtedness and liens securing same. Defendant has agreed to discharge and pay off said indebtedness as same accrues and at such times and in such manner as will protect and prevent Plaintiff suffering any damage or loss that might otherwise be occasioned by default of said indebtedness."

Lela Sunderman married Roy E. Roberts on July 17, 1945. Prior to this time Paul E. Sunderman was delinquent upon installments of the assumed indebtedness, but contends that his liability should be limited to installments which became due on or before the date of his former wife's remarriage. In other words, Sunderman contends that his liability should be measured by terms of the original agreement of July 6, 1944.

Six points are relied upon for a reversal of this judgment. They are grouped for presentation purposes, however, and set forth three contentions:

1. The original agreement and the deed should be taken and construed together in order to ascertain the true intention and agreement of the parties.

2. The clause limiting Sunderman's liability to the payment of installments becoming due so long as Mrs. Sunderman remained single and retained ownership of the property, was omitted from the deed because of fraud or mistake, and said deed should therefore be reformed.

3. The amount of damages was not conclusively established as a matter of law.

Appellant argues that the evidence raised fact issues as to each of the contentions set forth, and that it was therefore error to take the case from the jury.

■ Appellant's first contention is fully answered by the recent case of Baker v. Baker, 207 S.W.2d 244, 249, by this Court, in which Mr. Justice Murray reviewed applicable authorities and quoted with approval the following from Devlin on Deeds: "No rule of law is better settled than that where a deed has been executed and accepted as performance of an executory contract to convey real estate, the contract is functus officio, and the rights of the parties rest thereafter solely in the deed." Devlin, Law of Deeds, Vol. 2, § 850a. See also 14 Tex.Jur. 875, § 101.

■ In our opinion the trial judge correctly ruled as a matter of law, that appellant was not entitled to a reformation of the deed. As to certain matters there was a dispute in the testimony, but this does not lessen the effect of controlling circumstances which compel the sustaining of the deed as written.

There is no evidence of mutual mistake. Appellant suggests a unilateral mistake on his part and fraud on the part of his wife at the time the deed was executed. Mrs. Roberts testified that at a pretrial hearing the judge (a different judge than the one presiding upon this trial) expressed doubt as to the legality of the clause restricting Sunderman's liability upon his note assumption to the installments accruing while the wife remained unmarried and continued to own the property; that she informed Sunderman (who was not present at the hearing) of this fact, and consequently the provision was omitted from the deed. Mrs. Roberts was corroborated by the attorney who represented her in the divorce proceedings. Sunderman, on the other hand, testified that his then wife and her attorney told him the deed was drawn up in accordance with the contract and thereupon he

signed it, relying upon such representation. The judge who tried the divorce case also testified. He didn't remember having approved or disapproved a property settlement, or having discussed the provision restricting Sunderman's liability to installments accruing while his wife did not remarry.

The following facts are however undisputed. Prior to signing the deed, Sunderman was afforded an opportunity to read it. No one prevented him from doing so. He was also handed a copy of the supplemental pleading which alleged the execution of the deed and set forth its purport. A copy of this pleading, bearing Sunderman's signed receipt therefor, appears in the statement of facts. The alleged "mistake"—omission of certain language from the deed—is readily apparent from a reading of the deed. There is nothing latent about it. It is not the type of mistake that can only be discovered by applying the terms of the contract to the subject matter—such as the location of real property by means of a description contained in a written instrument. Any one able to read the English language and laboring under no mental disability would be able to discover upon a mere reading of the deed that Sunderman's liability was not limited to the payment of installments accruing prior to his wife's remarriage. In situations similar to this, the law does not leave property rights dependent upon parol evidence and the imperfect memories of witnesses.

 "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission." Indemnity Insurance Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W. 2d 553, 556, quoting from Upton v. Tribilcock, 91 U.S. 45, 50, 23 L.Ed. 203, 205.

Appellant in presenting his third contention argues that there are three possible theories of damages resulting as a result of Sunderman's failure to make the agreed payments. The theory adopted by the trial court was that Sunderman was liable for the amount of the note he agreed to pay less proper credits. From what has been heretofore said, it follows that the trial judge selected the proper theory and measure of damage. There was no error from appellant's standpoint in the credits allowed by the court against the indebtedness assumed by Sunderman.

All of appellant's points are overruled. This makes it unnecessary for us to discuss appellee's theory that the judgment should be affirmed on the theory of anticipatory breach (Pollack v. Pollack, Tex. Com.App., 39 S.W.2d 853, 46 S.W.2d 292), by reason of Sunderman's default prior to appellee's marriage with Roberts.

The judgment appealed from is affirmed.