Henry BRADFORD et ux., Appellants,

v.

Walton E. THOMPSON et al., Appellees.

No. 498.

Court of Civil Appeals of Texas, Tyler.

Nov. 19, 1970.

Rehearing Denied Dec. 17, 1970.

Margolis & Staffin, Harry W. Margolis, Dallas, for appellants.

Frank Cusack, Dallas, for appellee, Security Savings Ass'n.

Clifford Thyfault, Dallas, for appellee, Walton E. Thompson.

Brady, Drake & Wilson, Edward J. Drake, Dallas, for appellees, W. B. Post, Fidelity Title Co. & Security Title and Trust Co.

Charles H. Storey, Dallas, for appellee, Style-Rite Homes, Inc.

MOORE, Justice.

This is an appeal from a summary judgment' rendered in favor of the plaintiffs, Walton E. Thompson et al, in trespass to try title action.

The controversy arose in this manner: On October 13, 1964, defendants, Henry Bradford and wife, entered into a contract with Style-Rite Homes, Inc. for the purchase of a house and lot situated in Dallas County for a total consideration of $8,000.00 payable $1,200.00 in cash, and "$6,800.00 mortgage, $60.00 per month, principal and interest 6%, plus taxes and insurance." At the time of the execution of the contract Style-Rite did not own the property but was in the process of buying the same from plaintiff Walton E. Thompson. On October 15, 1964, two days after the execution of the contract, Style-Rite purchased the property from Thompson, assuming the unpaid balance due upon a note to Murray Mortgage Company in the amount of $5,246.66 and also delivering to Thompson its second lien note in the amount of $1,553.34. On the same date, Style-Rite executed a deed conveying the property to the Bradfords. The deed recited a total consideration of $8,000.00, payable $1,200.00 in cash and the assumption of the balance due on the first lien note held by Murray Mortgage Company in the amount of $5,246.66, together with the assumption of the second lien note executed by Style-Rite to Thompson in the amount of $1,553.34. The assumption clause in the deed recited that each of said notes was payable as provided therein and was secured by a deed of trust. W. B. Post was named as trustee in the deed of trust securing the second lien note. Prior to consummation of the sale, the Bradfords demanded a title policy. · After Fidelity Title Company agreed to issue the policy the closing of the sale took place at the office of the title company. Between the dates of October 19 and October 26, 1964, the parties appeared there at various times bringing the signed instruments, checks and etc. W. B. Post, the agent of the company, was in charge of the closing.

After various monies and documents had been received, he recorded the deed and other instruments with the County Clerk of Dallas County. The deed, together with the title policy, was received by the Bradfords on or about November 2, 1964, and they took possession shortly thereafter. Several days later the Bradfords received a letter from Security Savings & Loan Association advising them that the $1,553.34 note assumed by them in their deed, had been deposited with the association for collection. The letter further advised them that the $10.00 monthly payments were to be made to the association commencing on November 15, 1964. Thereafter, the Bradfords promptly made the payments due under each of the notes. In August 1964, they paid off the larger note to Murray Mortgage Company approximately four years in advance of the maturity date. Immediately thereafter they voluntarily increased their payments on the $1,553.34 note from $10.00 a month to $70.00 per month and continued to make such payments until February, 1967, when they stopped making any payments thereon. By letter dated June 5, 1967, Thompson through his attorney, notified the Bradfords that the second lien note was in arrears and that unless payments were made current, the property would be posted for sale under the terms of the deed of trust. No further payments having been made notice of sale was duly posted by Clifford Thyfault, the duly appointed substitute trustee, and the property was subsequently sold on January 2, 1968, to plaintiff, Walton E. Thompson, for the sum of $2,000.00. Thompson called upon the Bradfords to relinquish possession but they refused to do so. He then instituted a forcible entry and detainer suit against them. Being unsuccessful in such suit, Thompson then brought suit against them in trespass to try title which is the basis of the present litigation. In reply thereto the Bradfords answered with a plea of not guilty and by a cross-action for damages for fraud. In addition, they also filed cross-actions against Style-Rite Homes, Inc., hereinafter referred to as

"Style-Rite"; Security Savings Association, hereinafter referred to as "Security"; W. B. Post, hereinafter referred to as "the trustee"; Fidelity Title Company and Security Title & Trust Company, hereinafter referred to as "the title company".

The cause came on for hearing before the trial court upon the various motions for summary judgment filed by plaintiff, Walton E. Thompson, and all other cross-defendants as well as motions for partial summary judgments on behalf of the Bradfords. After a hearing, the trial court granted summary judgments in favor of the plaintiff and all cross-defendants. The motion of the Bradfords for a partial summary judgment was denied. From this judgment the Bradfords duly perfected this appeal.

By the first point of error defendants urge that the trial court erred in granting summary judgment in favor of the plaintiff and cross-defendants because they contend that the pleadings and summary judgment evidence create genuine issues of disputed facts in each of the following respects.

First, they argue that there is a genuine issue of disputed fact upon the question of whether or not a fraud was perpetrated upon them by Thompson, Style-Rite and Post in connection with their purchase of the property. While they do not contend that any of the foregoing parties made any specific misrepresentations, they take the position that the contract of sale contained a false representation in that it stated that there would be only one mortgage against the property whereas the deed recited the assumption of two mortgages. They argue that the creation of the second lien prior to the sale was in direct contradiction with the terms of the purchase contract and constituted a fraudulent scheme to mislead them. As we understand it, they argue that since it was represented that there would be only one lien they were led to believe that the $1,553.34 note was not secured by a lien; that they relied upon the representa-tion that there was only one lien and in reliance thereon refused to make payments on the $1,553.34 note and as a result suffered a loss by reason of the foreclosure. We are of the opinion that the evidence offered by appellants fails to establish a cause of action for fraud.

In the first place we do not believe that it can be said that the alleged representation caused their loss. In order to sustain a cause of action for fraud, appellants had the burden of showing that the representation proximately caused their damage. Hayden v. Dunlap, 84 S.W.2d 306 (Tex. Civ.App., Dallas, 1935). Assuming arguendo that Style-Rite represented that the mortgage was to be a single mortgage and that such constituted a false representation, and that they were induced to accept a deed whereby they assumed two mortgages, we do not believe that the assumption by them of two mortgages was the cause in fact of the foreclosure. Appellants do not dispute the fact that the sum of $6,800.00 was to be secured by some type of lien, nor do they dispute the fact that the deed provided for a deferred consideration in exactly the amount of $6,800.00 as provided in the contract. Therefore, appellants knew the deferred purchase price of $6,800.00 was to be included in one lien or two liens, that upon the consummation of the sale by the deed, they would thereafter be obligated to pay the $6,800.00. That they did not pay the full amount of $6,800.00 prior to the foreclosure is without dispute. It is without dispute that they stopped making any payments on the note long before the foreclosure proceedings were instituted. Had they not refused to discharge their obligation, the note would have remained current and the second lien would not have been available to Thompson for foreclosure. Therefore, appellants' damages resulted not because the deed provided for the assumption of two liens rather than one, but was directly and proximately caused by the appellants' failure to pay the full amount of the $6,800.00 as they agreed to do in their contract of purchase.

■ There is still another reason why we do not believe appellants have raised a disputed fact issue upon the question of fraud. The only theory upon which a party is permitted to recover or defend himself because of fraud, is that he believes such representations, and, relying upon them contracted or acted to his hurt. In no event can a recovery be had if either of these elements is wanting. It is imperative that the complaining party believe the false representations to be true at the time he acted thereon.

In the case of Thrower v. Brownlee, 12 S.W.2d 184 (Tex.Com.App., 1929), it is said that:

"* * * Where false representations or promises are made to induce another to act, and, before such other does act, he learns of the falsity of such representations or promises, it cannot of course be said that he relied upon them believing them to be true, for, knowing their falsity, he has not been deceived. Deception is the very essence of an action for deceit, and that which does not deceive cannot be deceit within legal contemplation. It is true that one who makes a false statement, inducing another to act to his hurt, will not be heard thereafter to say the other should have been diligent to inquire as to the truth of the matter, for, in the absence of actual knowledge to the contrary, the one to whom the misrepresentation has been made has a right to rely upon it. Buchanan v. Burnett, 102 Tex. 492, 119 S.W. 1141, 132 Am.St.Rep. 900. But, where actual knowledge of the falsity of the statement or promise is brought home to the person to whom it is made before he has acted to his hurt, a different question is presented. It is then not a question of diligence but of actual knowledge, which, as matter of fact and of law, negatives deception. The authorities everywhere sustain this contention, and nowhere more clearly than in Texas." (citing cases)

■ The foregoing rule, of course, applies only to those cases where, at the time of the discovery of the fraud, the contract was wholly executory, or, in other words, the party complaining had not changed his position for the worse, and could recede without suffering injury. Thrower v. Brownlee, supra; 13 A.L.R.2d 807.

■ At the time Style-Rite delivered the deed to W. B. Post, for delivery to the Bradfords, the contract was wholly executory. Appellants take the position that they did not read the deed or know of its contents until the time they stopped making payments thereon. While the rule seems to be that a party to whom representations are made has a right to rely upon such representations, and is not called on to make an investigation to ascertain their truth or falsity, yet there is a limitation to the rule in that he must not be in possession of information showing the utter falsity of the alleged representation. Wortman v. Young, 235 S.W. 559 (Tex.Com.App., 1921). The Bradfords do not dispute the fact that they had access to the deed prior to the consummation of the sale. A reading of the deed would have readily shown that they were assuming two mortgages rather than one. The general rule is that the grantee in a deed accepted by him is a party to the deed and though he does not sign it, he is concluded by the recitals in the deed. Greene et al. v. White et al., 137 Tex. 361, 153 S.W.2d 575 (Tex.Sup., 1941). Moreover, a party claiming through a deed is generally held to have notice of all facts recited therein or fairly disclosed by the instrument whether he has actually seen or read it, or has any knowledge of its contents. 59 Tex.Jur.2d, sec. 754, pp. 277–280; Sunderman v. Roberts, 213 S.W.2d 705 (Tex. Civ.App., San Antonio, 1948, n. w. h.); Tuggle v. Cooke, 277 S.W.2d 729 (Tex.Civ.App., Ft. Worth, 1955, err. ref., n. r. e.). Appellants give no excuse for not having read the deed. It does not appear in the record that they failed to read the deed, or have it read or explained to them, because of any act or conduct on the part of any of

the appellees or their agents. After the deed had been delivered to W. B. Post for delivery to appellants, they appeared at his office and paid the down payment on the property. Therefore, we think it must be said that it appears as a matter of law that notwithstanding the fact that they did not read the deed, appellants were nevertheless charged with knowledge of the contents thereof at the time that they accepted it. National Equitable Soc. of Belton v. Carpenter, 184 S.W. 585 (Tex.Civ.App., Texarkana, 1916).

We copy from Carver v. Moore, 288 S.W. 156, 158, by the Commission of Appeals, the following:

· " 'Actual knowledge of the fraud is not required; reasonable prudence must be exercised to discover the fraud, and knowledge of acts sufficient to put one upon inquiry will operate as notice of the fraud. Kuhlman v. Baker, 50 Tex. 630; Bass v. James, 83 Tex. 110, 18 S.W. 336; Powell v. March (Tex.Civ.App.) 169 S.W. 936.

\*   \*   \*   \*   \*   \*

" 'The presumption is that, if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, then he seasonably had knowledge of it. Wood v. Carpenter, 101 U.S. 135–143 (25 L.Ed. 807); Bass v. James, 83 Tex. 110, 18 S.W.2d 336.' "

See also Lindsey v. Dougherty, 60 S.W.2d 300 (Tex.Civ.App., 1933). Thus by reason of the deed, the Bradfords as ordinary prudent persons, were charged with knowledge of the fact the deed provided for the assumption of two mortgages. Consequently, they could not have been deceived by the alleged misrepresentation in the contract that there would be only one mortgage. As we view it, the record negatives deception, and as a result fails to show a cause of action for fraud.

■ Appellants next contend that there is a disputed fact issue upon the question of whether or not the holder of the note elected to mature the indebtedness. The record shows that Thompson, the holder, through his attorney, notified the Bradfords that the note was in arrears and that unless brought current the property would be posted for sale under the terms of the deed of trust. There being nothing to the contrary, it therefore appears that the holder of the note exercised his right to mature the same.

■ Appellants also contend that since the second lien was not of record when they accepted the deed they were bona fide purchasers of the property without actual or constructive notice of the second lien. The assumption of the second lien was clearly set forth in the deed. Therefore, as purchasers they were charged with notice of the existence of the lien regardless of whether recorded or not. 59 Tex. Jur.2d, sec. 754, pp. 277–280.

In their second point of error, the Bradfords contend that the trial court erred in refusing to grant them a partial summary judgment against the holder of the note because they contend that the evidence fails to show that they were in default upon the date of foreclosure. Therefore they say that, as a matter of law, the foreclosure was null and void. In this connection they argue that since the evidence shows they voluntarily commenced paying the sum of $70.00 per month on the second lien note rather than $10.00 per month as called for therein, such excessive payments constituted payment in advance, and if such excess payments be applied at the rate of $10.00 per month nothing was due and owing on the note as of the date of foreclosure.

The note recites in part, as follows:

"The principal of this note is payable in equal monthly installments of $10.00

each including interest, said installments to be credited first to the interest accrued to date of such installments and the balance to the reduction of principal; the first installment being due and payable on or before the 15th day of November 1964 and one installment to become due and payable on or before the 15th day of each succeeding month thereafter for a period of 136 months; at that time the payments will be increased to $60.00 per month until interest and principal is paid in full. The interest on this note is payable as set out above and all past due principal and interest shall bear interest from maturity at the rate of ten per cent per annum."

The problem, as put by the appellants, is this: Where a person is obligated to make equal payments on or before a certain day of each month, will an excess in one month be applied to satisfy a required payment in a subsequent month. A calculation of the interest due each month on the $1,553.34 note commencing on the date thereof shows that the $10.00 payments were never sufficient to discharge the interest accruing each month, much less pay anything on the principal. Thus at the time the Bradfords commenced making the $70.00 monthly payments the interest was in arrears and nothing had been paid on the principal.

It seems to be the rule in this State that where both principal and interest is due, and partial payments are made, the payments should first be applied to the discharge of the interest then due, and if the payment exceeds the interest then due, the surplus should be applied toward discharging the principal, and thereafter, the interest is to be computed on the balance of the principal then due. If the payment is less than the interest, the surplus of interest must not be taken to augment the principal but interest continues on the former principal until the payments, taken together, exceed the interest due and then the surplus is to be applied toward discharging the principal, and interest is to be computed on the balance of the principal as before. This is the so called "United States Rule", and is recognized in Texas. Tooke v. Bonds, 29 Tex. 419; J. I. Case Co. v. Laubhan, 64 S.W.2d 1079 (Tex.Civ.App., Amarillo, 1933, no writ); Community Savings and Loan Association v. Fisher, 409 S.W.2d 546 (Tex.Sup.); 47 C.J.S. Interest § 66. Applying the foregoing rules to the facts before us, the excess payment constituted payment on the principal and would not relieve appellants from making their regular monthly payments. It therefore conclusively appears that the note was in default long before the date of the foreclosure. The point appears to be without merit and is overruled.

Appellants assert by their third point that the foreclosure sale, as a matter of law, was void because the property was sold for inadequate consideration. In this connection the record shows without dispute that the property was purchased by Thompson for the sum of $2,000.00. According to the undisputed affidavit testimony of appellant, Henry Bradford, the property had a market value of $10,000 on the date of foreclosure.

A mere inadequacy of consideration alone does not render a foreclosure sale void. Tarrant Savings Association v. Lucky Homes, Inc., 390 S.W.2d 473 (Tex.Sup., 1965). For avoidance and in conjunction, there must be evidence of irregularity, though slight; which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price. Sparkman v. McWhirter, 263 S.W.2d 832 (Tex.Civ.App., Dallas, 1953, writ ref.). The record fails to show any such irregularities.

By the fourth and fifth points appellants urge that the trial court erred in refusing to grant them a partial summary judgment against the title insurance com-

pany. In this connection they say that the $1,553.34 second lien renders their title defective and the title company not having excepted same from the policy is, as a matter of law, liable to them for the loss sustained by them by reason of the lien. The company takes the position that the trial court properly granted a summary judgment in its favor because appellants' pleadings show, as a matter of law, that the title policy did not extend to the fact situation alleged by appellants. We have concluded that this contention must be sustained.

While the insuring clause in the policy in question guarantees appellants a good and indefeasible title, it contains this significant exception: "Nothing contained in this policy shall be construed as insuring against loss or damage by reason of * * claims arising under any obligation of the assured; * * *." Appellants by their pleading incorporated the policy by reference. They also incorporated by reference the deed in which they assumed the second lien. Thus, appellants' pleadings, on the face thereof, show not only the contract excluding liability, but also show facts bringing appellants' alleged cause under the exclusion clause. Consequently, their own pleadings demonstrate that no liability exists under the policy. In other words, the pleadings show, as a matter of law, that under the circumstances alleged by the appellant, the title company had no duty to indemnify them for their loss because the defect was one which arose by reason of an obligation assumed and therefore was expressly excepted from the contract. Steel Erection Company v. Travelers Indemnity Company, 392 S.W.2d 713 (Tex.Civ.App., San Antonio, 1965, writ ref., n. r. e.); Buffington v. Atlanta Title & Trust Company, 43 Ga.App. 444, 159 S.E. 297 (Geo. Court of Appeals, 1931). Based upon the pleadings alone the trial court was therefore authorized to enter a summary judgment against appellants.

Finding no reversible error the judgment is affirmed.