MARY H. KELLEY *vs.* NEWBURYPORT AND AMESBURY HORSE RAILROAD COMPANY.

Essex. Nov. 5, 1885. — May 6, 1886. FIELD & DEVENS, JJ., absent.

A street railway corporation, which has duly filed the certificate required by the St. of 1871, c. 381, § 6, stating that the amount of its capital stock has been unconditionally subscribed for by responsible parties, and that fifty per cent of the par value of each share thereof has been actually paid into its treasury in cash, cannot escape liability upon promissory notes given in payment for the building of its road, on the ground that fifty per cent of the par value of each share of its capital stock had not in fact been paid in at that time.

A contract may be ratified by the stockholders of a corporation if it is made with full knowledge of all the material facts, although in ignorance of the legal effect of such facts.

As a general rule, a contract between a corporation and its directors is not absolutely void, but voidable at the election of the corporation ; and the right to avoid it may be waived.

The directors of a street railway corporation made a contract with G. for building its road for a certain price in money and stock ; and he gave to the corporation a bond, with A. and B. as sureties, for the faithful performance of his contract. G. failed to perform his contract, and the board of directors called on the sureties, who themselves were directors, to perform it, with notice that they would be held liable to the corporation for all damages that might accrue to the corporation by their default. Thereupon A. and B. proceeded to finish the road according to the contract, in which originally they had no interest. The price was fair and reasonable ; the road, as completed by them, was a well-built road ; the advancements made by them were in consequence of the notice given to them by the directors, and not with any fraudulent design to obtain any pecuniary benefit for themselves from the contract. The directors, acting under a general vote of the stockholders authorizing them to make any settlement,

settled with A. and B. by giving them promissory notes. The corporation held and operated the road for nearly ten years without taking any steps to repudiate the notes, and paid interest upon them; accepted reports of the treasurer in which these notes were referred to as outstanding obligations; and also accepted a statute authorizing the corporation to issue bonds to a certain amount for the purpose of extinguishing its floating debt. *Held*, in an action on the notes, that the evidence was sufficient to warrant the jury in finding a ratification of the notes by the corporation.

CONTRACT upon certain promissory notes, alleged to have been made by the defendant corporation, payable to the order of E. G. Kelley and William C. Binney, and indorsed to the plaintiff. At the trial in the Superior Court, before *Blodgett*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*H. N. Shepard*, for the defendant.

*M. M. Weston*, for the plaintiff.

C. ALLEN, J. The first ground of defence is, that, by virtue of the St. of 1871, *c.* 381, § 6, the defendant was forbidden to build its road until a certificate had been filed in the office of the Secretary of the Commonwealth, signed and sworn to by the president, treasurer, clerk, and a majority of the directors, stating that the whole amount of the capital stock had been unconditionally subscribed for by responsible parties, and that fifty per cent of the par value of each share of the same had been actually paid into its treasury in cash. It appeared by the auditor's report that such a certificate was filed in season, but he received evidence to show, and found as a fact, that fifty per cent of the par value of each share had not been paid in when the certificate was filed, though the whole of the capital stock had been duly subscribed for, and more than fifty per cent of the whole amount of it had been paid in at the time of the making of the contract for the construction of the road. Under these circumstances, the defendant contends that it had no power to enter into a contract for the construction of its road, that the act was *ultra vires*, that the unanimous action of the stockholders would not cure the taint, and that all promises to pay for work and materials in building the road, and all notes given therefor, are void, and incapable of ratification; and that it cannot now be held responsible therefor, although for nearly ten years it has held, enjoyed, operated, and taken the earnings of

the road so built for it, and paid the interest on the notes. In reference to this ground of defence, it is sufficient to say, that, according to cases heretofore decided, it has been declared to be unavailable. It was not intended by the Legislature to allow corporations to escape from their just debts in this manner. *First National Bank of Salem* v. *Almy*, 117 Mass. 476. *Augur Steel Axle Co.* v. *Whittier*, 117 Mass. 451. *Whitney* v. *Wyman*, 101 U. S. 392. See also *Davis* v. *Old Colony Railroad*, 131 Mass. 258; *Monument National Bank* v. *Globe Works*, 101 Mass. 57; *Gold-Mining Co.* v. *National Bank*, 96 U. S. 640; *National Bank* v. *Matthews*, 98 U. S. 621; *Harris* v. *Runnels*, 12 How. 79; *O'Hare* v. *Second National Bank*, 77 Penn. St. 96.

The defendant then contends that the notes in suit cannot be enforced, because they were given to its own directors in payment for the construction of the road by them, and are now held by the plaintiff subject to all defences which might have been made to a suit upon them by the payees. Upon this point, the only question properly before us is, whether there was sufficient evidence to warrant the jury in finding a ratification of the notes by the corporation. The presiding judge assumed that the notes were originally void, and submitted to the jury the single question of ratification. Being of opinion that there was sufficient evidence to warrant the verdict on the question of ratification, we have no occasion to consider whether it might not also have been proper to submit to the jury, under proper instructions, the question of the original validity of the notes.

The first request for instructions was properly refused. It seems to refer to a supposed theory of the plaintiff that the notes might be ratified by the directors, whereas the sole question submitted to the jury was whether they had been ratified by the stockholders, that is, by the corporation itself.

The third request is open to the same objection.

The second request sought to incorporate into the doctrine of ratification a new element, namely, that, in order to make a valid ratification, the principal must have known, not only all the facts, but also the legal effect of the facts, and then, with a knowledge both of the law and facts, have ratified the contracts by some independent and substantive act. This request also was properly refused. It is sufficient if a ratification is made

with a full knowledge of all the material facts.    Indeed, a rule somewhat less stringent than this may properly be laid down, when one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately, having all the knowledge in respect to it which he cares to have.    *Combs* v. *Scott*, 12 Allen, 493, 497.    *Phosphate of Lime Co.* v. *Green*, L. R. 7 C. P. 43, 57.

The fourth and fifth requests were both to the effect that, on all the evidence, the jury would not be warranted in finding a ratification.    The circumstances of the case were such as to render the inference of ratification natural and easy, especially in view of the lapse of time since the notes were given.    There was uncontradicted evidence tending to show that the directors made a contract with one Gowen for building the road for a certain price in money and stock, and that he gave to the company a bond, with Kelley and Binney as sureties, for the faithful performance of his contract.    Gowen failing to perform his contract, the board of directors called on the sureties, who themselves were directors, to perform it, with notice that they would be held liable to the company for all damages that might accrue to the company by their default.    Thereupon the sureties proceeded to finish the road, according to the contract, in which originally they had no interest.    The price was fair and reasonable; the road as completed by them was a well-built road; the advancements made by them were in consequence of the notice given to them by the directors, and not with any fraudulent design to obtain any pecuniary benefit for themselves from said contract.    The settlement was made with them by the directors, under authority of a general vote of the stockholders authorizing them to make any settlement, and the notes in suit were given.

As a general rule, a contract between a corporation and its directors is not absolutely void, but voidable at the election of the corporation.    Such a contract does not necessarily require any independent and substantive act of ratification, but it may become finally established as a valid contract by acquiescence.    The right to avoid it may be waived.    *Union Pacific Railroad* v. *Credit Mobilier*, 135 Mass. 367, 376.    *Twin-Lick Oil Co.* v. *Marbury*, 91 U. S. 587.    *Hotel Co.* v. *Wade*, 97 U. S. 13.    *Ashhurst's*

*appeal,* 60 Penn. St. 290. In the present case, such ratification or waiver might well be inferred, and indeed we do not see how any other inference could fairly be drawn, from the act of the company in holding and operating the road for so many years without taking any steps to repudiate the notes, from the payment of interest, from the acceptance of the report of the treasurer on October 6, 1875, and October 2, 1878, in which these notes were referred to as outstanding obligations, and from the acceptance of the St. of 1884, *c.* 159, authorizing the company to issue bonds to an amount not exceeding $30,000 for the purpose of extinguishing its floating debt.

*Exceptions overruled.*