SIMON STERNBERGER et al.

*v.*

JOHN L. YOUNG et al.

[Submitted January 3d, 1908. Decided January 9th, 1908.]

1. In a case in which an agent, authorized to sell real estate at a certain price, conspires with the purchaser to procure the principal to accept a less price in consideration of a large benefit to be derived therefrom by the agent, the transaction cannot stand in a court of equity. This court will not lend its aid to the enforcement of an agreement of such a character, but will dismiss a bill brought for that purpose.

2. The whole transaction is voidable at the option of the defrauded owner.

3. Where, however, a broker is employed to sell, and is not invested with any discretion, or his employer does not rely upon the benefit of the broker's skill or judgment, there the broker is a mere middleman who is employed for the purpose of bringing the two principals together, and in such case he may recover commissions from both.

On final hearing on bill, answer, replication and proofs.

The bill in this case is filed by the complainants for an accounting. The facts are that the complainants, in 1890, were

engaged in the business of real estate agents in the city of Atlantic City, and that they had on their books for sale a tract of land in that city owned by a man named John W. Wright, who at the time of the transaction herein mentioned was temporarily residing in Colorado Springs, in the State of Colorado, on account of illness.

It appears by the bill and by the testimony that the complainants had been authorized by Mr. Wright, the owner, to make sale of the lands for $30,000, and, as Solomon Sternberger says, they had it on their books at $30,000. The complainants called the attention of the defendant John L. Young, to this tract of land. Mr. Young asked how much they wanted for the property. Mr. Solomon Sternberger said $30,000, and at the same time told Mr. Young there were several people, four or five, after it, and that it had to be sold quickly, as the owner was very low in health in Colorado Springs. Mr. Young stated that if he could buy the property for $25,000 he would take it, and Mr. Solomon Sternberger inquired if Mr. Young got the property for $25,000 "what would he get," and it was then and there agreed that Mr. Young should pay to Sternberger Brothers two per cent. commission on all the sales and five per cent. commission on all the rents. This being agreed to, the complainants telegraphed to Mr. Wright making the offer of $25,000 for the land. Mr. Wright replied, accepting the offer, and within a week or ten days thereafter he died. Some months later the title was conveyed by representatives of Mr. Wright to the defendants Young and McShea, and the complainants were paid a commission by the grantor for making and consummating the sale. About a year later, and on April 1st, 1891, an agreement was executed between the complainants and the defendants in pursuance of the oral arrangement entered into before the telegram was sent to Mr. Wright at Colorado Springs, by which Young and McShea agreed to pay Sternberger Brothers two per cent. commission on all sales out of the tract, whether such sales were made by the complainants as agents or not, and also five per cent. commission on all the rents collected from the tenants of the property. Within the next twelve years the property was sold in parcels for sums aggregating $162,800. The bill is filed

to recover two per cent. commissions on that amount and five per cent. commissions on all the rents received by the defendants in the meantime.

*Mr. William I. Garrison,* for the complainants.

*Mr. Clarence L. Cole,* for the defendants.

HOWELL, V. C.

The bill in this case must be dismissed upon the ground that this court will not lend its aid to the enforcement of an agreement of the character above set out. One of the primary rules attending a litigation in this court requires the complainant to come to the court with clean hands.

The bill alleges that the complainants, about the 1st of January, 1890, were commissioned by John W. Wright to make sale of the tract of land in question; that the lands and premises were worth much in excess of the sum of $25,000, and that at that price there were several persons seeking to purchase the land, among whom were the defendants, and that the complainants, acting as the agents for the then owner of the said land and premises, and of the defendants, consummated a sale of the premises to the defendants for $25,000 on or about March 20th, 1890; that at the time of the sale the complainants favored the defendants and secured the premises for them at a small purchase price, and that it was thereupon agreed between the complainants and defendants that the complainants should act as the exclusive agents for the defendants in the collection of rents from the said premises, and in the sale of same, for the compensation above mentioned, which agreement was afterwards, on April 1st, 1891, reduced to writing.

The testimony taken on the final hearing sustains this allegation, but adds to it that the complainants had it on their books at $30,000, and the further statement that they refused to communicate the $25,000 offer to Mr. Wright until they had secured from the defendants an agreement by which they were to receive the commissions as above stated. This, therefore, is a case in which an agent, authorized to sell real estate at a certain price,

conspires with the purchaser to procure the principal to accept a less price in consideration of a large benefit to be derived therefrom by the agent. Such a transaction cannot stand in a court of equity. The whole transaction is voidable at the option of the defrauded owner. *Condit* v. *Blackwell, 22 N. J. Eq. (7 C. E. Gr.) 481; Young* v. *Hughes, 32 N. J. Eq. (5 Stew.) 372; Henninger* v. *Heald, 52 N. J. Eq. (7 Dick.) 431; Howard* v. *Murphy, 70 N. J. Law (41 Vr.) 141; Panama Company* v. *India Rubber Co., L. R. 10 Ch. App. 515; 45 L. J. Ch. 121; Grant* v. *Gold Exploration Co., 1 Q. B. 233 (1900); 69 L. J. Q. B. 150; Hughes* v. *Washington, 72 Ill. 84.*

There is a class of cases to which this rule does not apply in all its strictness. Where a broker is employed to sell, and is not invested with any discretion, or his employer does not rely upon the benefit of his skill or judgment, there the broker is a mere middleman who is employed for the purpose of bringing the two principals together, and in such case he may recover commissions from both. *Knauss* v. *G. Krueger Brewing Co., 142 N. Y. 70; McLure* v. *Luke, 154 Fed. Rep. 647.*

That, however, is not the case here. The complainants were the agents of an owner who was almost at the point of death at the time of the transaction. They say that it was his desire to close out his ownership in the land at once in anticipation of his impending fate. It was undoubtedly his desire to obtain as large a price as possible for the property, and he was entitled, under the circumstances, to the benefit of the honest, disinterested and independent advice of the men whom he had entrusted with the sale. The transaction cannot stand. No court would sully its hands by upholding any claim for compensation under these circumstances.

The rule which denies compensation to the agent in these circumstances reaches to every collateral contract growing out of the transaction, and infects every branch of it with what the courts have denominated constructive fraud. It extends to the contract now sought to be enforced, for the reason that the defendants are quite as guilty as the complainants. They had no right, either at law or in equity, to tamper with the agent from whom they were purchasing. They had no right to make him

also their agent in the premises without the knowledge and full concurrence of Mr. Wright, or his representatives after his death. They had no right to connive at placing him in a situation in which he would be tempted to neglect or violate his duty to his principal.

Hence, at the outset the complainants meet an obstacle which cannot be overthrown, and renders an investigation into the merits of the case impossible. The parties are *in pari delicto,* and as to the complainants, it must be said that "he that hath committed iniquity shall not have equity."