### ROGERS-HILL & CO. v. SAN ANTONIO HOTEL CO.   (No. 7995.)

Court of Civil Appeals of Texas. San Antonio
April 25, 1928.

Rehearing Denied June 13, 1928.

1. Brokers ⬅88(2, 3)—Evidence as to broker's employment and procurement of purchaser held insufficient to take to jury action for commissions.

In action for broker's commissions for sale, of hotel property, evidence as to employment, ratification of employment, and procurement, of purchaser, *held* insufficient to take case to jury.

2. Brokers ⬅19—Broker owes principal utmost good faith and loyalty.

Real estate broker owes to principal utmost good faith and loyalty, and should allow no interest to come between him and fealty to principal.

3. Brokers ⬅65(4)—Broker employed by seller cannot represent purchaser.

Real estate broker will not be permitted to represent purchaser when he has been employed by seller.

4. Corporations ⬅426(2)—Private corporation may ratify contract made by agent without authority.

Private corporation may ratify contract made by agent who has not been authorized by it to make such contract, provided contract is one which could have been legally entered into by, corporation.

5. Principal and agent ⬅166(1)—Principal's ratification of agent's unauthorized act must be with full and complete "knowledge" of material facts.

To ratify and authorize act of agent, general rule is that ratification must be by principal with full and complete knowledge of all material facts, and "knowledge" necessarily is actual knowledge and not merely opportunity for acquiring it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Knowledge.]

6. Corporations ⬅426(12)—Knowledge by board of directors that officer had employed brokers is necessary to ratification of such act.

Board of directors of corporation selling hotel property cannot ratify act of officer in employing brokers unless they had knowledge that such officer had employed such brokers.

7. Trial ⬅139(1)—That there is "some evidence" is not enough to authorize submission of question to jury.

It is not enough to authorize submission of question as one of fact to jury that there is "some evidence," but instructed verdicts are not encouraged in cases where there is sufficient testimony in favor of plaintiff to raise reasonable doubt in average mind as to plaintiff's claim being a just one.

8. Brokers ⬅53—Brokers cannot recover commission unless they are procuring cause of sale.

Underlying basis of all claims by brokers to commission is that they were procuring cause of sale, and no matter how great exertions may have been they cannot recover for services if contract of sale was made without their intervention.

9. Brokers ⬅45—Where broker voluntarily abandons efforts or fails to find purchaser within reasonable time without owner's fault, owner may sell to any one, including purchaser first found by broker.

Contract of broker is governed by laws applicable to ordinary contract, and, if broker voluntarily abandons efforts to find purchaser or fails to find one within reasonable time without fault of owner, contract of employment is ended, and thereafter owner may sell to any one, including purchaser first found by broker.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Rogers-Hill & Co. against the San Antonio Hotel Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Church, Lawley & Graves and J. D. Dodson, all of San Antonio, for appellant.

Carter & Lewis and Cunningham, Moursund & Johnson, all of San Antonio, for appellee.

FLY, C. J. The appellant firm, consisting of Wallace Rogers and Russell C. Hill, brought suit against appellee, a private cor-

poration, to recover the sum of $70,000 as commissions for procuring a purchaser for the Gunter Hotel property, situated on the northeast corner of Houston and St. Mary's street in San Antonio, Tex., which property was purchased by T. B. Baker, for the sum of $1,400,000, on September 26, 1924. After hearing the evidence, the district judge of the Seventy-Third judicial district instructed the jury to return a verdict in favor of appellee, which was accordingly done, and judgment so rendered.

The only vital question in the case is, Were any facts presented by appellants which required a submission of the evidence to the jury? To solve that problem, the evidence offered by appellants, consisting almost exclusively of the testimony of Russell C. Hill, one of the appellants, must be investigated. The contention of appellants was that they were employed by L. J. Hart, president of the San Antonio Hotel Company, and that he was duly empowered by said company to employ appellants to procure a purchaser, and, if not so authorized to make such employment, that the officers and shareholders of such corporation knew that he had employed appellants, and accepted, with such knowledge, the fruits of their labors. It was alleged that Hart, the president and general manager for appellee, had agreed to pay appellants 5 per cent. on the sales price obtained by them on the hotel, or in the alternative that appellants should recover that sum as a quantum meruit.

The uncontradicted evidence showed that L. J. Hart, president of the corporation, was a very skillful and efficient real estate broker in the management of large and costly properties, and had been engaged in the real estate business for 35 years, and, when on May 29, 1924, he was authorized to enter into negotiations for the sale of the hotel property to Baker by the board of directors, it was not contemplated by either of the directors, that he should employ another agent to participate in such negotiations. No such authority was given him by the board of directors at any time.

Appellants claim that in February, 1924, Hill had approached Hart with a view to being employed to effect a sale of the hotel properties to T. B. Baker, and that there was an understanding with Hart that appellee would compensate appellants if they succeeded in making a sale to Baker satisfactory to appellee. At that time L. J. Hart had not been authorized to enter into any negotiations with Baker, or any one else, for a sale of the property. There was no ratification, either express or implied, of any attempt upon the part of Hart to employ other real estate agents and bind appellee to pay for their services. All the testimony shows that the directors knew nothing of any conference or promises by Hart to appellants or either of them.

Russell Hill swore that he was in the real estate and insurance business and was associated with Wallace Rogers in 1924, when the sale was made to Baker of the Gunter Hotel property. Up to that year there were no business relations between his firm and the hotel company, and he had not rendered any service to it. Hill had tried to find tenants for Hart for some stores, but had not succeeded. T. B. Baker, in the early part of 1924, was operating the St. Anthony and Menger Hotels in San Antonio. At that time Hill went to Baker to see if he could be interested in buying the Gunter Hotel. Up to that time he had not spoken to L. J. Hart about selling the Gunter, or to any one of the directors or shareholders. After talking with Baker, Hill testified he went to Hart, who told him the Gunter Hotel was not on the market, "but that, of course, if they got a satisfactory price for the property, they would sell." · Hill said he had several interviews with Hart, who said if he sold to Baker that he would demand all cash. He then reported to Baker and told him that Hart had not named a definite price for the hotel, and Baker said he considered $1,250,000 the value of the hotel, and told Hill he would give him 5 per cent. commission if he could get the hotel for the sum named. That conversation was repeated to Hart by Hill. Hart then said he would take $1,500,000 for the property. At the second meeting with Baker, Hill told him he would work for him for $25,000. Baker said it was too much. That was early in 1924, and on May 17, 1924, he stated that he had received a note from Hill "laying out proposition you could make regarding hotel purchase." He stated in the letter that he had agreed to pay Hill $25,000 if the hotel could be bought for $1,250,000, and wrote that, if that could not be done, the matter was declared to be a closed incident. Up to that time, at least according to Hill's testimony, he had been working for Baker for an anticipated fee of $25,000. Hill admitted that at the time he was arranging for a commission of $25,000 he had an implied agreement with Hart for a commission from the hotel company. His authority to act as agent for and receive a commission from the hotel company, according to Hill, was that, when he went to Hart and presented the proposition to sell the Gunter Hotel to Baker, Hart had said: "All right, we will be willing to sell, provided we get a satisfactory price." Hill swore: "I consider that is full authority for us to go ahead with the deal." That is what he considered his employment by Hart. He said in regard to his offer to represent Baker for $25,000: "We offered to do that, notwithstanding the fact that we were employed by the San Antonio Hotel Company." He claimed, however, if his offer had been accepted, he would have canceled his contract with Hart. He stated: "We were willing to represent one fellow as much as the other, just so we got pay for it; that is correct." The letter from Baker of May 17 was never answered by

Hill, nor repudiated by him, although he stated therein that there had been a contract between them. Hill stated that he tried to borrow money for Baker, but said Hart never requested him to do it. He went to Dallas to see Baker about financing the hotel purchase, and wrote him in August, and had written to Baker in August that he had made tentative arrangements to get the necessary money.

[1] The testimony fails to disclose that Russell Hill was the procuring cause in bringing appellee and Baker together, and fails to show that he ever approached Baker except to obtain employment from him either in purchasing the Gunter Hotel or in financing the trade. He failed to bring the parties together and failed to obtain any money to finance the proposition. He was, as he admits, uncertain whether to enter the employment of Baker or that of appellee. He wanted some of the money passing around for the hotel and was not particular from whom it came. According to his testimony, after he thought he had been employed by Hart, he tried to get Baker to employ him. Baker seemed to be under the impression that Hill was employed by him and revoked his employment months after Hill claimed to have been employed by appellee. According to Hill's testimony, at the time that he was acting for Hart to obtain $1,500,000 for the hotel he sought employment with Baker to obtain a less sum.

[2, 3] The real estate broker owes to his principal the utmost good faith and loyalty. He should allow no interest to come between him and fealty to his principal. It is a rule that the broker will not be permitted to represent a purchaser when he has been employed by a seller. He was authorized to sell and his duty was to obtain as large a sum for the property as possible, but if commissioned to buy, then he should endeavor to buy at as low a figure as possible. He could not under the facts of this case have acted in good faith with both parties. The interest of the one, the desire of the one, was for all the money he could obtain for the property; the interest of the other to buy as cheaply as he could. The difference between Hart and Baker was $250,000, and that difference rendered it a moral impossibility for one man to represent both of them. And yet Hill says: "We were willing to represent one fellow as much as the other, just so we got pay for it." That is not the foundation of good faith and loyal service. Mechem Agency, § 2412. As said in Scott v. Kelso, 62 Tex. Civ. App. 163, 130 S. W. 610:

"In all cases the principal is entitled to the best effort and unbiased judgment of his agent, and the law, for reasons founded in public policy, forbids the agent's assumption of a relation which affords temptations antagonistic to his duty. As is said in one of the cases: 'As agent for the vendor, his duty is to sell at the highest price. As agent for the vendee, his duty is to buy at the lowest. And even if the parties bargain for themselves, they are entitled to the skill, knowledge, and advice of the agent, and at the same time to communicate with him without the slightest fear of betrayal so that it is hardly possible for him to be true to the one without being false to the other.'"

In this case Hill was going from one party to another, from seller to buyer, conferring with each, ascertaining the plans and designs of each, and trying to negotiate with each one for his services. He placed himself in a position to arouse suspicion of his good faith and loyalty to either one of the parties that might have permitted him to serve him. For some reason, neither party availed himself of his services. Sternberger v. Young, 73 N. J. Eq. 586, 75 A. 807.

There is not one particle of evidence tending to show that the directors who had granted Hart power to negotiate for a sale knew of any employment by him of appellants as subagents. Their act empowering Hart to act, their knowledge of his having been long in the real estate business and that he was a very expert real estate salesman, preclude the idea that they intended to or did empower him to employ another firm of real estate agents to assist him in the sale of the Gunter Hotel. He had only the power to negotiate, which is amply shown by his report of the sale to the board of directors, who did not adopt the report, but lowered the price.

[4-6] A private corporation may ratify a contract made by an agent who had not been authorized by it to make the contract. Of course it must be a contract which could have been legally entered into by the corporation. In order to ratify the unauthorized act of an agent and make it effectual and obligatory upon the principal, the general rule is that the ratification must be made by the principal with a full and complete knowledge of all the material facts connected with the transaction to which it relates. Mechem on Agency, §§ 393, 394 and 395; Trustees v. Bowman, 136 N. Y. 526, 32 N. E. 987; Kelley v. Railroad, 141 Mass. 496, 6 N. E. 745. It will be remembered that the knowledge necessary to a ratification is actual knowledge, and not merely an opportunity for acquiring the knowledge. Iron City Bank v. Fifth Nat. Bank (Tex. Civ. App.) 47 S. W. 533; Id., 92 Tex. 436, 49 S. W. 368. Without knowledge that Hart had employed appellants, the board of directors could not have ratified such act on his part.

Appellants insist that, because Hill gave notice of his employment by Hart to the directors before they confirmed the sale, they acted with knowledge and therefore ratified his employment. Their agent, however, had denied that he had employed Hill, and the board of directors did not credit Hill's claim. They acted on what they considered the thoroughly reliable report of Hart, and, instead of ratifying, repudiated the claim of Russell Hill. The decisions relied on by appellants

as to ratification are as to the act of sale itself and not to all the incidents connected with it. The directors undoubtedly did confirm the negotiations of Hart resulting in a sale, but did not ratify anything that he denied he had done.

No benefit whatever accrued to the hotel company by the unauthorized acts of Russell Hill, who sought to thrust himself into business negotiations between Hart and Baker. He was officious in seeking to obtain the money of "one fellow" or the other, but received little encouragement from either. The corporation could ratify the sale of the hotel, and did ratify it, and it cannot be held to have ratified any contract claimed to have been made by Hart with Hill, which Hart strenuously denied. The directors had received no benefits from the efforts claimed to have been put forth by Hill. He had not procured a purchaser, he had not procured finances for Baker, if appellees were under any obligation to pay for his services in behalf of Baker, and they had the right to act upon the report of their president that Hill had done nothing.

Hill did not, and could not truthfully, testify that he first drew Baker's attention to the sale of the hotel property. Percy Tyrrell swore, and it was not contradicted, that he had conversed with Baker about buying the Gunter Hotel in November, 1923, months before Hill approached him. Tyrrell also talked to Hart about it. Tyrrell began the negotiations that led to the sale of the property to Baker. In the first week of February, 1924, which was before Hill talked with Baker the first time, Tyrrell went to see Baker, who stated his interest in the proposed sale of the Gunter. Tyrrell then went to Hart, who told him that the hotel company would be glad to entertain a proposition. Tyrrell brought about a meeting between Hart and Baker, and the negotiations began that resulted in the purchase of the Gunter Hotel. These are facts not controverted by Hill, because he knew nothing about them.

[7] While the case of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, has been greatly overworked by bench and bar, and while perhaps it goes farther than any other case in defining the requisite amount of evidence to require a case to go to the jury, still it stands as the law in Texas. In that case several rather ultra statements in different cases are approved, among the least subject to criticism from the viewpoint of the Texas conception of the powers and rights of juries, being a quotation as follows, from Toomey v. Railway, 3 C. B. (N. S.) 149, which was obtained from Baulec v. Railway, 59 N. Y. 356, 17 Am. Rep. 325:

"It is not enough to authorize the submission of a question, as one of fact, to a jury, that there is 'some evidence.'"

The rule existing in Texas before the Joske v. Irvine Case was decided was that, if the circumstances are such that reasonable minds might draw different conclusions respecting the case of the plaintiff, he is entitled to go to the jury upon the facts. Cunningham v. Railway, 88 Tex. 534, 31 S. W. 629; Lee v. Railway, 89 Tex. 588, 36 S. W. 63. This court has never encouraged instructed verdicts in any case where there is sufficient testimony in favor of the plaintiff as to raise a reasonable doubt in the average mind as to the plaintiff's claim being a just one, but in the case at bar we conclude that there is no evidence upon which a jury could predicate a verdict for appellants. While decisions would indicate that real estate brokers have had less stringent rules as to evidence applied to them than to other less favored litigants, we believe that the same rules of evidence should be invoked against or in favor of them as against other classes of citizens.

We hold that the testimony of Hill, if taken as true, does not show that Hill was employed by Hart, appellee's president; it does not show authority in Hart to employ other agents; it fails to show ratification of employment of other agents by Hart, on the part of either directors or shareholders; and the doctrine of estoppel cannot be applied to them on account of knowledge and the acceptance of benefits accruing to them from the services of Hill. They had no knowledge of such services, and received no benefits from them.

[8, 9] If all the testimony of Hill be true, it shows that, though he was given ample time in which to obtain a purchaser, at least six months, he failed to submit a purchaser willing, ready, and able to purchase the property, and the purchaser was at last obtained through the efforts of Percy Tyrrell and L. J. Hart. It is not enough that Hill may have spent time and money, under a contract of agency, to procure a purchaser; his acts did not effect a contract of sale. His efforts accomplished no result, and he has no basis for a claim for remuneration. As said by this court in English v. George, 55 Tex. Civ. App. 137, 117 S. W. 996, in which a writ of error was refused:

"The underlying basis of all claims by brokers to commissions is that they were the procuring cause of the sale. No matter how great the exertions of the brokers may have been they cannot recover for their services if the contract of sale was made without their intervention."

There is not a doubt arising from Hill's testimony that the sale of the Gunter Hotel would have been made to Baker if Hill had not been in existence. We approve the clear opinion of Judge Dunklin, delivered for the Fort Worth Court of Civil Appeals, in the case of Parkey v. Lawrence, 284 S. W. 283, which fully sustains our views on the facts of this case. We quote from that case to emphasize what is said hereinbefore:

"There is nothing peculiar in the contract of a broker with his principal. It is governed by the

.laws applicable to the ordinary contract. 4 R. C. L. 320. If the broker voluntarily abandons his efforts, once begun, to find a purchaser for property, or fails to find one within a reasonable time, all without the fault of the owner, then his contract of employment is at an end, and thereafter the owner is at liberty to sell the property to any one, including the purchaser first found by the broker."

That opinion is sustained by reason and authority. Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Hancock v. Stacey, 103 Tex. 219, 125 S. W. 884; Goodwin v. Gunter, 109 Tex. 56, 185 S. W. 295, 195 S. W. 848.

Hill swore that he was repeatedly told by Hart he wanted a purchaser who would pay cash. If he had procured Baker, he did not procure a purchaser who could or would pay cash. He did not procure a purchaser for cash or on credit.

The judgment will be affirmed.