## HADEN CO. v. RIGGS.
### No. 10074.

Court of Civil Appeals of Texas. Galveston.
June 25, 1935.

Rehearing Denied July 18, 1935.

King, Wood & Morrow, of Houston, for appellant.

Fulbright, Crooker & Freeman, Lester Settegast, and Chas. A. Perlitz, Jr., all of Houston, for appellee.

LANE, Justice.

O. F. Bright was the owner of a certain truck which was, on the 6th day of November, 1929, loaded with shell belonging to the Haden Company and being driven by one Maurice Robertson upon and along a street in River Oaks, an addition to the city of Houston. While being so driven it struck and killed Jimmy Riggs, a negro boy about five years of age, the son of William Riggs. Said truck had on it a sign which read, "We haul for The Haden Co.," or "The Haden Co."

This suit was brought by William Riggs, father of the deceased Jimmy Riggs, against the Haden Company, a corporation, W. C. Bright, O. F. Bright, and Maurice Robertson, to recover damages for the loss of his deceased son, Jimmy, and for the sum of $200 funeral expenses incurred by him in the burial of his said son.

The plaintiff alleged that on the 6th day of November, 1929, the Haden Company was engaged in the business of hauling shell, gravel, and other material by trucks, and that all of the defendants at such time operated a number of trucks in and over the streets of Houston for the purpose of hauling such material; that on said date Jimmy Riggs was negligently run over and killed by a heavily loaded truck driven by defendant Maurice Robertson in a negligent and careless manner. The several acts of negligence alleged are specifically set out in the petition. The plaintiff further alleged: "That the said truck so running over and killing the said Jimmy Riggs, was owned, operated and controlled by the defendants herein and each of them, and said driver thereof, the said defendant Maurice Robertson, was at the time and upon the occasion in question in the employ of the defendants, and each of them and under their management and control, and that the defendant Maurice Robertson at

the time, and upon the occasion in question was acting within the scope or apparent scope of his employment and for and on behalf of the defendants and each of them."

Plaintiff's prayer is for judgment against all defendants, jointly and severally, for the sum of $15,200, interest and attorney's fees.

The Haden Company answered by general demurrer, general denial, and specially alleged contributory negligence on the part of the deceased boy, the details of which are of no importance in the disposition of the issues presented here. The Haden Company also pleaded as a defense that plaintiff, William Riggs, and his agents, servants, and employees were guilty of negligence contributing to and approximately causing the injury and death of Jimmy Riggs, (1) in permitting the child to play upon the street unattended, (2) in leaving the child in the care of one so occupied with other duties as to be incapable of properly looking after him, (3) in not instructing the child not to cross the street unattended by an older person, and (4) in not warning the child to look up and down the street before crossing it.

All defendants, other than the Haden Company, answered by general demurrer, general denial, and plea of contributory negligence on the part of the deceased child.

A jury was chosen to try the case, but after all the evidence was presented, the Haden Company moved for an instructed verdict in its favor, which motion was refused, and the Haden Company excepted. The case was then submitted to a jury, to which the court gave the following instructions:

" 'Negligence,' as that term is used in this charge, and as is applicable to this case in its legal signification, is want of ordinary care; and ordinary care, as used herein, is such care as a person of ordinary prudence would use under the same or similar circumstances.

" 'Proximate cause,' as that term is used in this charge, and as is applicable to this case, is a cause which in a natural and continuous sequence, unbroken by any new and intervening cause, produces an event, and without which that event would not have occurred. To be a proximate cause of an event, it must be reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur.

There may be more than one proximate cause of an event.

"By the term 'new and intervening cause,' as that term is used in the foregoing definition of 'proximate cause' is meant an agency which breaks the sequence between an original act and the injury, and which of itself is sufficient to produce the injury, or some like injury. This agency must not be set in motion by the party who initiated the original act, and must be an agency which, with its consequences, a person of ordinary prudence under the same or similar circumstances should not have reasonably foreseen.

"The term 'preponderance of the evidence,' as used herein, means the greater weight and degree of the credible testimony.

"Bearing in mind the foregoing instructions, you will now proceed to answer the following special issues:"

In answer to certain special issues submitted, 1 to 6, inclusive, the jury found that the truck in question was at the time in question being driven by an employee of the Haden Company; that such driver on the occasion in question, just prior to the collision, failed to keep a reasonable lookout for pedestrians that might be crossing the street; that such failure was negligence and a proximate cause of the collision with Jimmy Riggs; that the driver of the truck, at the time and on the occasion in question, failed to have the truck under such control as a person of ordinary prudence would have had under the same or similar circumstances; that such failure was negligence and a proximate cause of the injury and death of Jimmy Riggs.

The jury found that the collision of the truck with Jimmy Riggs was not an unavoidable accident; that O. F. Bright in hauling for the Haden Company was not an independent contractor.

All special issues submitting the question of contributory negligence pleaded by defendants were answered favorably to the plaintiff. The jury by its verdict awarded to the plaintiff $1,800 as damages.

Upon return of the verdict of the jury, defendant the Haden Company presented its motion to the court praying for judgment in its favor non obstante veredicto, which motion was by the court refused, to which refusal the Haden Company excepted.

Upon the verdict of the jury the court rendered judgment for the plaintiff against

the defendants Maurice Robertson and the Haden Company ·jointly and severally, for the sum of $1,800. By such judgment it is decreed that the plaintiff shall recover nothing against O. F. Bright and W. C. Bright. From the judgment so rendered against it, the Haden Company has appealed.

Appellant, for reversal of the judgment rendered against it and for the rendition of a judgment in its favor by this court, contends that the trial court erred in overruling its motion for an instructed verdict, in that there was no evidence to justify the submission to the jury of an issue as to whether or not the driver of the truck in question was an employee of the Haden Company at the time of the collision, and in that the undisputed evidence showed that the driver of the truck was not an employee of the Haden Company at the time of the collision, but, to the contrary, such undisputed evidence showed that O. F. Bright, the owner of the truck in question, was an independent contractor in the hauling done for the Haden Company, and that the driver of the truck was the employee of O. F. Bright and not of the Haden Company.

Appellant also contends that notwithstanding the verdict of the jury, the trial court should, on its motion therefor, have rendered judgment in its favor, and that this court should on this appeal render such judgment, in that the undisputed evidence showed the driver of the truck in question was not an employee of the Haden Company at the time of the collision, but that he was at such time an employee of O. F. Bright, the owner of the truck, who was at such time an independent contractor.

We sustain appellant's contentions. Unquestionably, unless an issue as to whether Robertson, the ·driver of the truck, was an employee of the Haden Company, was raised by some probative evidence, there was no issue as between that company and the plaintiff, Riggs, and surely if the undisputed evidence shows, as we think it does, that Robertson, the driver, was not an employee of said company, it was the duty of the trial court to render judgment for the company upon its written motion therefor, at the close of the evidence, for the right and only right of recovery had or claimed to have been had by plaintiff against the Haden Company depends upon proof that the driver, Robertson, was an employee of the company. Such is the controlling question in this case.

We will here state in substance the testimony of each witness that counsel for appellee could reasonably claim bears upon the controlling question.

It is the testimony of O. F. Bright, the· owner of the truck, Maurice Robertson, the driver of the truck, and R. T. McDow that should be considered in determining the controlling question above stated. The only other witnesses whose testimony could be claimed to bear on this point were A. V. Lemon, J. B. Young (col.), Frank Alexander (col.), Mary Reddick (col.), and J. E. Johnson. They testified with varying degrees of certainty, but it can be conceded that their testimony (so far as this point is concerned) was to the effect that the truck involved in the collision bore a sign or signs on its side reading "The Haden Company" and nothing else, contradicting the testimony of O. F. Bright, the owner of the truck. The latter testified in effect that the truck bore the printing "We haul for The Haden Company—Building Material," or "We haul for The Haden Company— Sand and Gravel." These witnesses (except Bright, Robertson, and McDow), testified nothing else that could be construed to remotely bear on the question.

We here copy the substance of the testimony of Bright, Robertson, and McDow, as set out in appellant's brief, which we have verified as correct by an examination of the statement of facts.

O. F. Bright testified that at the time in question his business was hauling sand, gravel, and shell for the Haden Company; that he had no written contract, only a verbal contract, according to which he was paid for the haul in different zones in the city of Houston; that he owned four trucks and his father four; that they worked together, each paying for his own gas and oil; that they paid the upkeep together; that he paid the drivers; that the Haden Company paid him, Bright, each week for the amount hauled. That Maurice Robertson worked for him in November, 1929, and never worked for any one else during that time; that he paid Robertson's salary, hired him, and Robertson was still working for him at the time of the trial; that Robertson was hauling pipe for him in East Texas at the time of the trial, and had continued to work for him since the accident in question; that during the time that he was hauling gravel for the Haden Company,

Bright told Robertson when to go to work; that Robertson used his own judgment as to what route he would travel; that the Haden Company had no control over him in any way; that no one except him, Bright, had any authority to order Robertson to do anything; that it was his truck that had the collision with the little negro boy in question; that Maurice Robertson was the driver of the truck.

On cross-examination he testified that he had an oral agreement with the Haden Company to pay so much per yard in different zones; that he made the trade with McDow, the Haden Company's manager; that his, Bright's, men reported to him every morning at his place where he kept his trucks; that he then sent them to the Haden Company's south end plant with instructions to go anywhere that the Haden Company sent them, at any time, and over any route, and as many loads as the Haden Company wanted them to take; that he had had the agreement with the Haden Company about two years at that time; that if he did not have enough trucks, the Haden Company used others; that the Haden Company paid for the printing of the sign on the truck for advertisement purposes; that Mr. McDow sent out the trucks; that the foreman on the job for which the delivery was made generally directed where the load should be dumped; that it was the Haden Company's shell on the truck.

On re-direct examination he testified that he was paying Robertson at the time of the accident; that other contractors did have trucks out there off and on; that he believed they did at that time; that under the arrangement with the Haden Company, the Haden Company did not undertake to tell him over what road or route he should send his trucks; that as to what were his arrangements in regard to that, as to whether he, Bright, had the right to direct where they would go or not, or the Haden Company tell them on what route to go, "we had a city map there, and the boys looked on the map and used their own judgment where to go"; as to what arrangement the sign was painted on the truck by the Haden Company, it was for advertising purposes; they agreed to have it painted on there if he, Bright, would permit them to put it on as an advertisement; that it was not the Haden Company's truck; as to whether Mr. McDow told his men where to go, he gave the address on the ticket; that under his arrangement, Mr. McDow

had the right to tell the men where to go, when to go, and what to haul; that nothing was said in the oral contract with Mr. McDow about McDow's being prevented from telling these men on what route he wanted the shell delivered.

On cross-examination this witness testified that Robertson reported to him in regard to the handling of the truck, as to its upkeep; that he kept his trucks where he lived; that he furnished the gas and oil to operate the trucks and that there was nothing in the contract providing that the Haden Company reserved the right, or was to have the right, to direct his drivers as to what route or road they should travel.

The testimony of the witness above stated is undisputed, and in no way controverted, except as to the wording of the advertising sign appearing on the truck.

Maurice Robertson, the driver of the truck, called as a witness by the plaintiff, testified: That he was driving the truck that killed the little negro boy; that the truck belonged to O. F. Bright; that it bore a yard and a half of shell; that he was delivering it to a place in River Oaks; that he knew where to go from the ticket given him by Mr. McDow; that "they just give us a ticket and we go down and get our load and leave when we want to"; that they did not have to report to the Haden Company, but "they just go over and stay around until they get a load, stay there at the Haden Company plant, and when they get an order then they give us a ticket to haul it;" that he hauled, when they gave him a ticket, to where the ticket called for; that after he had hauled it and completed his load, he came on back and if there were another load he delivered it wherever he was supposed to deliver it; that if they had a lot of deliveries out there to make and were rushed, he would work until he got the deliveries through; that if they had some early morning deliveries to make, he would go over early so he could make those; that he usually ate lunch at 12 o'clock; that he got the truck in the morning at O. F. Bright's; that Mr. Bright kept up the repairs on the truck and paid for the gas and oil; that Mr. Bright paid for everything; that Mr. Bright paid his salary, and no one else did; that no one gave him any orders as to the route he would take in making deliveries; that Mr. Bright hired him; that Bright told him to haul whenever he got a ticket; that Mr. Bright did not tell him to do this, but he

was out there to haul the loads; that the more loads that were hauled, the more money was to be made; that he was paid by the day; that Mr. Bright paid him and that he had no certain hours, but generally got there at 7 and quit at 5; that Mr. Bright was paid by the load.

The foregoing was all of such witness' testimony on this point. This testimony of the witness was by no one, nor in any manner, disputed.

R. T. McDow testified that he was the shipping clerk of the Haden Company and had been for several years; that he knew Robertson, the driver of the truck involved in the accident; that as to the arrangement made with O. F. Bright in regard to hauling gravel, sand, etc., Bright was paid according to the distance at so much per yard; that no written contract was made; that he made what arrangements, if any, were made; that there was no verbal or written contract, he just came in and went to hauling like any one else did and he was paid so much a yard according to distance, whether in the city or out; that Maurice Robertson was not an employee of the Haden Company; that the Haden Company did not own the truck he was driving, nor pay for the gas or oil; that the Haden Company did not pay for repairs on the truck; that the Haden Company did not, nor did any one for the Haden Company, tell those men, this particular man, or any other man there driving for Bright, as to what routes they would take or how they were to go about delivering any of the stuff they hauled; that the Haden Company had no reason to tell them which way to go because it was not any of their business; that it was up to them to go the shortest route, and that this was not a matter that the Haden Company was concerned with; that they did not give a thought as to what route was taken; that he did not undertake to supervise or direct in any way the drivers' time of work or how they should do their work; that neither he nor the Haden Company hired any of the truck drivers.

On cross-examination he testified on this matter that the Haden Company was in the business of buying and selling building material, sand, shell, and gravel; that all material out there (at the plant) was hauled by other people's trucks; that there were no instructions as to what to haul; they were given a ticket with the information on it which called for the address and the class of material; that the tickets had the customer's name and address and the class of material on them, and the truck driver, whoever it might be, his name on it, and the reason for his name was to pay him by; the ticket was on a printed form; that the tickets had nothing with reference to the truck; that the drivers brought a signed ticket back, that that was the only way the company paid by was the signed ticket; that the driver was supposed to deliver his material to the address called for on the ticket; that in some cases the ticket denoted which trucks or truck driver "was carrying" the material and some time did not; that he was not sure about the ticket on the particular load, that there was a great probability it was just signed "Bright"; that Bright was like any one else, "we just paid them by the load, and if it took them five hours to make a load, that was their hard luck; if they made it in 30 minutes, it was good luck because of being paid so much a yard and according to the distance;" that the drivers never performed any services for the Haden Company, no more than haul the load; they were never on the Haden Company's pay roll; as to whether the truck drivers did whatever he asked them to do out there, "I didn't have to do anything, only Bright would send them out there to haul, if there was anything to haul; they would come out there to haul whenever there was a load to haul, Bright or anybody else"; that at times there had been as many as 50 trucks out there; if he wanted them to go and pick up a load at another plant, they would get the ticket at the other plant; that the truck drivers did not do whatever they were told; that he did not give the drivers orders, because they were not working for "us," they were working for Bright; that they had trucks out there of other people than Bright, depending on the business as to how many there were, that on the particular date he could not tell; as to whether he instructed them to go to other plants and pick up other material, no, they were not instructed. "If I had an order for 10 yards of sand for W. L. Jones, I would say, 'If you are hauling sand, you will haul it for W. L. Jones;'" as to whether, if he had an order for a yard of sand and did not have the sand at the south end yard and did not have the sand at the other yard, and whether or not it was his practice out there to send one of the drivers to this other yard to pick up that sand

and haul it for his customers, "In a case of that kind, we just told the driver, 'If you are going to haul that sand you will get it at the other plant,' and the driver would go to that place and pick it up, if he hauled it"; that if the truck drivers were told they could go home, Bright told them; that he never told them when to quit or that there would be no more hauling, that when he stopped he closed up; that the drivers could go home or stay as they chose; that he never told any of them they could go to lunch.

The foregoing was all of such witness' testimony on this point. The testimony of McDow was by no one nor in any manner disputed.

The facts in the instant case are almost identical with those in the case of Security Union Ins. Co. v. McLeod (Tex. Com. App.) 36 S. W.(2d) 449; Id. (Tex. Civ. App.) 22 S.W.(2d) 952, in which it was held that the driver of the truck was an employee of the truck owner. The only substantial difference that we can see in the facts of these two cases is that the accident happened while the truck was on its way to the truck owner's house unloaded in the McLeod Case, and in the instant case it happened while the truck was loaded and 'on the way ·to deliver the load. But in the McLeod Case, Menefee was hauling for no other concern, and the court of course made no point of the fact that the accident happened while the truck was empty.

In the case of Southern Surety Co. v. Shoemake (Tex. Com. App.) 24 S.W.(2d) 7, under a similar state of facts, the court also held that the driver of the truck was not an employee of the gravel company. In the Shoemake Case, the loading was done by the driver himself, but in the McLeod Case, supra, the court holds, in effect, that this makes no difference, and of course in reason it does not. The formality or want of formality of the contract in the Shoemake Case and in the instant case are practically the same.

In the case of Planters' Cotton Oil Co. v. Woods (Tex. Civ. App. writ of error refused) 25 S.W.(2d) 188 it was held that a boy driving a truck which belonged to his father, hauling cotton seed for the cotton oil company, was not an employee of the cotton oil company, but of his father. The contract in that case was entered into in about the same way as in the instant case. The father was paid according to the amount of cotton seed hauled, and the cotton oil company did not attempt to state any definite hours. The company paid the truck owner, the father, and made no attempt to regulate the route over which the hauling was done.

We call attention to the following authorities showing that the right of control of the ultimate details of the employment is the deciding point. 39 C. J. 1274, § 1462; National Cash Register Co. v. Rider (Tex. Com. App.) 24 S.W.(2d) 28, 29; Lone Star Gas Co. v. Kelly (Tex. Com. App.) 46 S.W.(2d) 656; King v. Galloway (Tex. Com. App.) 284 S. W. 942; 19 A. L. R. p. 240, also 17 A. L. R. 622, quoting Labatt; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Blair v. Jefferson & N. W. R. Co. (Tex. Civ. App.) 214 S. W. 936, 937; Amalgamated Roofing Co. v. Travelers' Ins. Co., 300 Ill. 487, 133 N. E. 259; Sargent Paint Co. v. Petrovitzky, 71 Ind. App. 353, 124 N. E. 881.

Counsel for appellee contends that there was evidence that the truck in question bore a sign worded "The Haden Company" on its side, and that this alone was sufficient evidence to require the trial court to submit to the jury the inquiry as to whether or not they found that the truck was being driven by an employee of the Haden Company at the time of the collision in question.

There is, we think, no merit in such contention. It seems to be well settled that if there is any presumption of ownership arising from the mere fact that the appellant's name was on the truck, such is but a presumption and not evidence, and should not be considered as evidence when the undisputed direct evidence shows that the driver of the truck was not an employee of appellant, but that he was at the time of the collision an employee of O. F. Bright, the owner of the truck, and the presumption mentioned vanishes. Texas News Co. v. Lake (Tex. Civ. App.) 58 S.W.(2d) 1044; Bond v. St. Louis-San Francisco R. Co., 315 Mo. 353, 288 S. W. 777; Murphy v. Tumbrink (Mo. App.) 25 S.W.(2d) 133, 134; Houston News Co. v. Shavers (Tex. Civ. App.) 64 S.W.(2d) 384; Winerich Motor Sales Co. v. Ochoa (Tex. Civ. App.) 58 S.W.(2d) 193; Margulis v. National Enameling & Stamping Co., 324 Mo. 420, 23 S.W.(2d) 1049.

What we have said, in the opinion of the majority of this court, renders it unneces-

sary to consider any further assignments of error presented by appellant.

For the reasons above expressed, the majority of this court concludes that the judgment of the trial court as against appellant should be reversed, and that judgment should be here rendered for appellant, and it is accordingly so ordered. The judgment against the defendant Maurice Robertson is undisturbed.

Justice GRAVES dissents from this conclusion of the majority as to the reversal and rendition, as above stated.

Reversed and rendered.

GRAVES, Justice (dissenting).

The considerations prompting the dissent are these:

1. Since this court's judgment of rendition holding that the evidence established as a matter of law that Bright was an independent contractor sets at naught the verdict and judgment rendered below upon findings on special issues to the effect that Robertson, the driver of the truck in question, was an employee of the Haden Company, and that Bright, the owner of the truck, was not an independent contractor, the sole question is whether or not the evidence for the plaintiff below raised the issue of Robertson's being such an employee.

2. The rule of law by which this question must be resolved is that the appellate court, "could not render the judgment, if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 143 S. W. 1150; Ladies', etc., Soc. v. Magnolia Cemetery Co. (Tex. Civ. App.) 268 S. W. 198; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Owen v. Al. Parker Securities Co. (Tex. Civ. App.) 296 S. W. 620; Harrison v. Orr (Tex. Com. App.) 10 S.W.(2d) 381; Harpold v. Moss et al., 101 Tex. 540, 109 S. W. 928; Rogers-Hill & Co. v. San Antonio Hotel Co. (Tex. Civ. App.) 7 S.W.(2d) 601; Bowman v. Texas Brewing Co., 17 Tex. Civ. App. 446, 43 S. W. 808.

3. In this instance, there was no definite, defined contract between Bright and the Haden Company—none of it being in writing, but all resting in parol—upon consideration of which the court could determine as a matter of law whether or not it established the relation of independent contractor between Bright and the Haden Company; that is, the establishment of just what the relation between them was had to be determined from the evidence as to how the actual relationship between them was executed and carried out. This being the situation, many of the authorities relied upon by the appellant wherein the court determined that the contracts involved, as a matter of law, established the relation as that of an independent contractor are obviously inapplicable.

When, therefore, the whole body of the testimony upon both the nature of the contract itself and the manner in which it was understood, executed, and carried out by the parties is considered, it seems plain that it did not as a matter of law exclude the reasonable conclusion that Robertson through Bright was, in fact, an employee of the Haden Company; at any rate, it is amply sufficient to have clearly raised an issue of fact that was properly submitted to the jury.

4. As thus appraised, the testimony which justified the able trial court in submitting the special issues to the jury may fairly be summarized as follows:

Bright's trucks at the time of the accident in question and for two or three years prior thereto had been hauling exclusively for the Haden Company, and there is no evidence in the record that he ever hauled for any one else; Bright had been making and was making all the Haden Company's deliveries unless there was too much for such trucks to handle; on the instructions from the Haden Company, Bright had sent his trucks to the paintshop where the sign of the Haden Company was painted on it at the Haden Company's cost and expense; the Haden Company, under Bright's agreement with it, had the right to and did designate the number of loads to be hauled by such trucks, and had the right to and did determine the time for the haul, and the amount of the loads that were to be hauled; the drivers of Bright's trucks were instructed by Bright to travel the route designated by the Haden Company; the Haden Company picked the driver it desired to haul each load; if there were early deliveries to be made, the drivers of Bright's trucks were required by the Haden Company to be at the Haden Company's plants early, and such drivers were also required by the Haden Company to

work as long as the Haden Company wanted them to; Bright had nothing at all to do with where the trucks were sent by the Haden Company, nor did he have anything to do with where or how the trucks dumped the materials hauled by them, McDow, the manager of the Haden Company's south end plant being the man in charge of the trucks at that plant.

. On the day in question, Robertson, the driver of Bright's truck which killed the plaintiff's minor son, and who had been delivering for the Haden Company nearly three years prior thereto, had reported at the Haden Company's plant at 7 a. m., and, just prior to the collision in question, on instructions from this Mr. McDow, the Haden Company's manager, had had a load of shell loaded by one of the Haden Company's employees on the truck Robertson was driving that had "the Haden Company's" sign thereon; then, in accordance with such instructions, he was on his route to deliver the shell to one of the Haden Company's customers when he ran over and killed plaintiff's minor son.

The evidence of the control (and right of control) by the hirer of the truck over the driver in the instant case is as strong, if not stronger, than that in Smith Bros. v. O'Bryan (Tex. Civ. App.) 62 S.W.(2d) 505, in which the majority of this court— including the writer hereof—held that such testimony presented an issue for the jury to pass upon as to whether or not the driver was an employee, or an independent contractor. Writ of error has been granted in the case, on application of·both parties to the cause, but the Supreme Court has not as yet decided the question.

The opinion of the majority in the present case seems squarely in conflict with the opinion of the Commission of Appeals in Texas Emp. Ins. Ass'n v. Owen, 298 S. W. 542, 543. There the commission held the question as to whether the driver of the truck was an employee or an independent contractor to be one for the determination of the jury, notwithstanding the facts were clearly not so strong as those above shown to have existed here.

In the Owen Case, 291 S. W. 940, 942, this is quoted from the Court of Civil Appeals' opinion:

"The McKnight Company, before employing deceased, demanded to know what class of truck he would use, and advised him of the mileage from the pit to San Jacinto and from the pit to Glenwood, for which he would be paid, what hours he could work, directed him where to drive his truck in the pit to be loaded, directed. the character of gravel to be hauled each load, loaded the truck and issued him a ticket at the pit, and directed him whether such load should be delivered at Glenwood or at San Jacinto Heights; and on reaching such destination McKnight Company measured his load, punched his ticket, and directed him where it should be dumped; he was not required to haul any specific number of cubic yards, but he was paid weekly on a basis of the number of cubic yards per mile he had hauled; and, if his truck failed to pull the load out of the pit, McKnight Company hauled it out with a team. The deceased was performing unskilled work—manual labor; he was neither building nor producing anything. * * *

"That the deceased was furnishing his. own truck, was paid so much per cubic yard per mile, was not required to travel any specific route, nor to haul any certain number of cubic yards, nor to travel at any definite rate of speed, nor to operate his truck in any particular gear, are the facts relied on to show that, as a matter of law, the deceased was an independent contractor, and appellant entitled to a directed .verdict. * * *

"Under the facts recited and other circumstances in the record, we are not authorized to hold, as a matter of law, that the deceased was an independent contractor (King v. Galloway (Tex. Com. App.) 284 S. W. 942; Missouri, K. & T. Ry. Co. v. Romans (Tex. Civ. App.) 114 S. W. 157; Wm. Cameron & Co. v. Realmute, 45 Tex. Civ. App. 305, 100 S. W. 194; Geo. McKinstry v. Guy Coal Co. et al., 116 Kan. 192, 225 P. 743, 38 A. L. R. 837, and annotations); but, in our opinion, the court was correct in submitting to the jury as an issue of fact, whether or not the deceased was an independent contractor (Maryland Casualty Co. v. Scruggs (Tex. Civ. App.) 277 S. W. 768, and authorities cited)."

Judge Speer of the Commission of Appeals, on error brought by both parties to the decision of the Court of Civil Appeals, supra, said:

"We agree with the Court of Civil Appeals in its disposition of the association's assignments, complaining that the trial court should have given its summary instruction, and that that court erred in submitting the issue whether or not the de-

ceased was an employee of the McKnight Transfer, Livery & Sales Company at the time of the accident in question. We approve what was said by Associate Justice Jackson upon these questions. The facts of this case certainly do not bring the deceased within the accepted definition of an 'independent contractor.' * * *

"Practically the only indicium of employer and independent contractor is that the deceased owned and furnished the truck for hauling the gravel that he was engaged to deliver. But this circumstance is no more controlling than if he had insisted upon furnishing his own shovel for loading the gravel when he was otherwise employed as a common laborer by the day. There is lacking here the indispensable feature of an 'undertaking to do a specific piece of work.' There was not contemplated any completed job. It was a mere service at the will of the parties. There are many features shown by the evidence and stated by the Court of Civil Appeals, wherein the McKnight Company had and exercised control over the deceased in the prosecution of his work. This is the test. * * *

"There being evidence, then, tending to show that the deceased was an employee of the McKnight Company rather than an independent contractor, and the contract being oral, there was no error in submitting that issue to the jury. Likewise, since the court could not say as a matter of law that the deceased was an independent contractor, the plaintiff in error cannot complain that he submitted that issue also to the jury. We think all assignments of error by Texas Employers' Insurance Association should be overruled."

If the conclusions stated be sound, it follows that the judgment of rendition was erroneous.

### On Motion for Rehearing.

PLEASANTS, Chief Justice.

The very earnest motion for rehearing filed by counsel for appellee forcibly presents the contention that the majority of this court erred in holding that there was no evidence in the case sufficient to raise an issue against the appellant's evidence showing that the owner of the truck, whose employee negligently caused the truck to strike and kill the minor son of appellee, was an independent contractor and not an employee of appellant.

After full and careful reconsideration of the record, the majority of the court adhere to the conclusions expressed in their original opinion, and the motion has been ordered overruled.

Since appellee's argument on the motion places so much stress upon the alleged change of views of the writer from those concurred in by him in the opinion of the majority of this court in the case of Smith Bros., Inc., v. J. R. O'Bryan, 62 S.W.(2d) 505, he deems it not improper to say that the record shows that he played a small part in "messing up" the case by the opinions in the Smith Bros. Case if there was such messing. However, as he recalls the record in that case, which is now in the Supreme Court, he was led to concur in the majority opinion because there was evidence tending to show that the appellant in that case had full direction and control of the movements of all the trucks engaged in making deliveries of its products to its customers, and claimed and exercised the right to discharge any of the drivers of these trucks. Whether or not I was mistaken in my fact conclusions or in my conclusions of law thereon in that case does not seem to me to be at all material in the decision of appellee's motion in this case.

 There is, in my opinion, no evidence in this case that raises any issue as to whether the driver of the truck, who negligently caused the injury complained of, was an employee of appellant. The material portion of the testimony of all the witnesses in this case is set out in Justice LANE'S opinion and need not be repeated. In goes without saying that if O. F. Bright, the owner of the truck, was an independent contractor, the driver of the truck employed by him and under his exclusive direction was not an employee of appellant.

The fact that the name "The Haden Company" was painted on all the trucks used by Bright, who had a contract with appellant to make deliveries of its products, is of no significance, since the undisputed evidence shows that Bright agreed with appellant when the contract was made to haul and deliver appellant's products, that for advertising purposes the appellant might paint on the sides of the trucks used by Bright under his contract the words "We haul for The Haden Company."

It cannot be said merely because the contract between Bright and appellant was not in writing that its terms could not be definite. The evidence as to what the parol contract was is clear, certain, and definite, and such being the case the contract is entitled to the same consideration as one in writing.

Nor does the fact that appellant's business was so large that all of the trucks owned and operated by the contractor Bright were required to carry out his contract with appellant and that for two years Bright's trucks were exclusively used in carrying out this contract tend to show that Bright was not an independent contractor.

The trucking business and the business conducted by appellant were wholly separate and independent business enterprises, and it cannot be held that because Bright's contract with appellant required the use of all of his trucks for two years that Bright ceased to be an independent contractor.